MIRIAM CALDWELL, Respondent, *v.* JOHN P. CALDWELL, Appellant.

Argued May 19, 1948; decided July 16, 1948.

*Menahem Stim* and *Michael J. Mahoney, Jr.,* for appellant. I. The Mexican mail order divorce is a nullity and defendant is not estopped from questioning its validity. (*Fischer* v. *Fischer,* 254 N. Y. 463; *Maloney* v. *Maloney,* 288 N. Y. 532; *Stokes* v. *Stokes,* 198 N. Y. 301; *McCullen* v. *McCullen,* 162 App. Div. 599; *Earle* v. *Earle,* 141 App. Div. 611; *Matter of Burdak,* 173 Misc. 839; *Krause* v. *Krause,* 282 N. Y. 355; *Vose* v. *Vose,* 280 N. Y. 779; *Wynn* v. *Wynn,* 188 Misc. 425; *Querze* v. *Querze,* 290 N. Y. 13; *Fleischer* v. *Fleischer,* 188 Misc. 402; *Oldham* v. *Oldham,* 174 Misc. 22.) II. Plaintiff is not entitled to the relief granted, even under the holding of *Krause* v. *Krause* (282 N. Y. 355). (*Amerling* v. *Amerling,* 180 Misc. 701.)

*Samuel Weinreb* for respondent. Defendant is estopped from questioning in this action the prior divorce obtained by himself. (*Querze* v. *Querze,* 290 N. Y. 13; *Vose* v. *Vose,* 280 N. Y. 779; *Krause* v. *Krause,* 282 N. Y. 355.)

CONWAY, J. We have presented to us the question of whether any effect may be given by our courts to a divorce obtained by mail from a court of a foreign nation at the instance of one domiciled in this State.

In 1939 plaintiff and defendant desired to marry. Before so doing it was necessary for defendant to divorce his then wife. At first it was planned that he procure the divorce in Nevada. Due to monetary considerations, that scheme was abandoned and defendant's wife was asked to assist by going through a divorce proceeding in a Mexican court since that would be less costly and the divorce could be obtained more quickly. While stating that she believed such a proceeding to be valueless, she consented to co-operate. A New York attorney (who may have breached the canons of ethics adopted by the New York State Bar Association, dependent upon the content of his advice [see *Matter of Anonymous,* 274 App. Div. 89]) was visited and retained. Thereupon defendant and his wife executed powers of attorney to

counsel resident in Mexico so that they might there be represented before the court. Those powers of attorney were mailed and in due course, a decree of divorce was granted by the Court of First Instance of Huamantla, Judicial District of Juarez, State of Tlaxcala, Republic of Mexico. The decree was received by mail and was offered in evidence on the trial herein by plaintiff. Neither the defendant nor his wife visited Mexico. The decree contains no recital that either party to the action was ever physically present or domiciled in Mexico.

Upon receiving notification of the granting of the divorce, plaintiff and defendant, who were domiciled in New York, went to Virginia and were there married before a Justice of the Peace at Manassas. They returned to New York City immediately and parted at the railroad station, the defendant taking a train for California.

In 1940, plaintiff brought a proceeding in the Domestic Relations Court, Family Division, for the support of herself as defendant's wife and for the support and maintenance of their child. The record in that proceeding, containing the testimony of plaintiff and defendant, was received in evidence and is before us by stipulation of the parties. After the trial the Justice determined that the Mexican decree was a nullity and that he had then no power under the Domestic Relations Court Act to provide for the support of the child. (But see N. Y. City Dom. Rel. Ct. Act, § 101, subd. 6, added by L. 1942, ch. 761, § 7, as amd. by L. 1944, ch. 738, § 7.)

Then in 1946, the plaintiff commenced the present action for separation and support alleging that she was duly married to defendant and that he had abandoned her. She further sought custody of and support and maintenance for the child of the alleged marriage.

The defendant pleaded a defense of *res judicata* by reason of the Family Court decision. That defense is not properly interposed. (*Loomis* v. *Loomis,* 288 N. Y. 222.)

The trial court gave judgment for plaintiff, finding that she had proved the allegations of her complaint and awarded her custody of and maintenance for the child. The Appellate Division affirmed upon the ground that the defendant might not be heard to impeach the judgment of divorce previously obtained by

him in the courts of a foreign jurisdiction. Both courts relied upon our decision in *Krause* v. *Krause* (282 N. Y. 355).

We think that the rule of quasi-estoppel in the *Krause* case (*supra*) is not applicable here. In that case, the defendant husband, *while retaining his residence in this State,* went to Nevada and obtained a decree of divorce there from his first wife, who neither entered an appearance nor was personally served and who at all times remained a resident of this State. He then married the plaintiff wife. After six years of married life she brought an action against him for separation and support upon the ground of abandonment. We held that the Nevada decree would not be recognized by this State and that the subsequent marriage to plaintiff by defendant was void because of his incapacity to enter into a valid marriage but that having himself procured the Nevada decree he would not be permitted to assert its invalidity so as to avoid an obligation to support the plaintiff wife whom he had married on the strength of his Nevada decree.

The rule of quasi-estoppel, which we fashioned and applied in that case, has been strengthened and fortified by the cases of *Williams* v. *North Carolina* (317 U. S. 287, 325 U. S. 226). Domicile is the controlling factor. This is made abundantly clear in the following language of the majority opinion (FRANK-FURTER, J.) in the second *Williams* v. *North Carolina* case (*supra,* p. 229): " Under our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil. *Bell* v. *Bell,* 181 U. S. 175; *Andrews* v. *Andrews,* 188 U. S. 14. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it. * * * " We are commanded by the Constitution to give full faith and credit to the judgment of a sister State — a command which has no relation, of course, to foreign nation divorce decrees. Such a judgment has prima facie validity in our courts. The absent defendant spouse is customarily served in accordance with the requirements of procedural due process in the other State. Thus the decree is valid unless and until attacked by collateral evidence that the plaintiff was not in fact domiciled in the sister State at the time of its rendition. Prior to such

collateral attack the judgment establishes a finding of actual residence of the successful party plaintiff for the requisite statutory period and also of the added mental ingredient necessary for the jurisdictional finding of domicile. Consequently, for the procurer of such decree to attack it collaterally, he must contradict under oath his own declarations as to domicile also made under oath in the sister State. In effect the procurer of the sister State divorce in order to attack it, must attempt to establish affirmatively in our courts that he succeeded in perpetrating a fraud upon the court of that sister State. To refuse to permit that is not unreasonable but is consonant with justice.

The reason for that rule vanishes when we have presented to us a situation where two persons attempt to confer jurisdiction upon a court of a foreign nation by means of the execution of powers of attorney to counsel residing there and then forwarding such instruments by mail without ever visiting that nation or establishing their domicile there. This is the device which results in what we have come to denominate " a mail-order divorce ". There is not even the slightest semblance or color of jurisdiction justifying action by a court. The spouses here never submitted themselves to nor invoked the jurisdiction of a court of the foreign nation as we understand those terms. They violated our statute embodying our public policy (Domestic Relations Law, § 51). Their collusive agreement and conduct may not be the foundation for the creation of any rights. This differs from the situation in the *Krause* case (282 N. Y. 355, *supra*). Here, the defendant, assuming that he was the sole procurer of the divorce in Mexico, engaged in no deception of the court there and perpetrated no fraud upon it. He never alleged or claimed domicile in Mexico. He was never there. Moreover, in the *Krause* case we approved in the following language (p. 359) *Vose* v. *Vose* (280 N. Y. 779) which involved a decree of a court in Mexico: " In *Vose* v. *Vose* (280 N. Y. 779) the plaintiff in a prior action was allowed to repudiate the judgment of divorce which he had obtained. In that case neither of the parties ever left this State and the judgment which was repudiated was that of a divorce by a Mexican court which had not even the slightest semblance of jurisdiction to act in the premises. The husband and the wife in that case had merely entered into a collusive agreement to obtain from a court of a foreign country in which correspond-

ence through the mails constituted the only nexus between either of the interested parties and the court which entered the judgment of divorce. In this case it may be observed also that section 51 of the Domestic Relations Law (Cons. Laws, ch. 14) interdicts any agreement between a husband and wife ' to alter or dissolve a marriage or to relieve the husband from his liability to support his wife.' * * * "

We restated our position three years after the decision in the *Krause* case (*supra*) in *Querze* v. *Querze* (290 N. Y. 13). There the wife, in an action for divorce against her husband, was permitted to assert the invalidity of a prior decree of a court of Mexico, obtained by mail, despite the fact that she herself had procured the decree and that the defendant husband had remarried in reliance upon it. (See, also, *Senor* v. *Senor*, 272 App. Div. 306, 312, 313, PECK, J., affd. 297 N. Y. 800.)

To hold that one is estopped or precluded from showing the invalidity of a " mail order divorce " is to allow such a void decree to affect, in some measure, the marital status of residents of this State. Mexico is one of our neighboring nations but no different rule may be applied to it than to a European, African or Asiatic nation. The legal profession and, indeed, the general public now recognize the valueless character of mail order divorces. To grant such a decree even the limited operative effect in this State urged by plaintiff would be to abandon the legal position taken in the *Vose* and *Querze* cases (*supra*).

Since the decree of the Mexican court is a nullity from which no rights of any kind may spring, the question then arises as to what judgment, if any, may be entered affecting the custody, support and maintenance of the child of plaintiff and defendant. In the proceeding in the Family Court in 1940, the Justice (SICHER, J.), in his opinion, reported in 174 Miscellaneous 906, 915–916, attempted to advise plaintiff as to her rights. At that time it was the law of this State, in accordance with the rule as stated by us in *Davis* v. *Davis* (75 N. Y. 221) that in an action for divorce or separation where the relief sought was denied, the trial court was without power to retain jurisdiction of the action so as to enter a decree affecting the custody and maintenance of a child, except in one instance not material here. To settle such question of custody and maintenance it was necessary, following the denial of relief in the divorce or separation action, to proceed

under section 70 of the Domestic Relations Law or to bring a separate action in equity.

In *Davis* v. *Davis* (*supra*, p. 227), we said: " * * * It would be an anomaly in legal proceedings to allow a complainant, who had failed to establish a claim to the principal relief sought, to have a decree against the defendant for the mere incidents to that relief. In this case, the plaintiff, by her suit, invoked the jurisdiction of the court to grant her a separation under the statute. She has failed to make a case for a divorce, and the defendant was, we think, entitled to a judgment of dismissal. The court was not authorized, in this action, after having denied judgment of separation, to award to the plaintiff the custody of the children, or make a decree for their support. The general jurisdiction which appertains to the Supreme Court, as a court of equity to interfere for the protection of infants — and by virtue of which, in a proper case, where the interests of infants require it, they may be taken even from the custody of the father and placed under the care of strangers — cannot be invoked to sustain the judgment in this case. In this statutory action, the power of the court is to be sought in the statute itself, and only such judgment can be rendered as is authorized thereby." (See, also, *Finlay* v. *Finlay*, 240 N. Y. 429, 431, 432; *Fein* v. *Fein*, 261 N. Y. 441, 443, 444.)

In matrimonial actions, the courts of this State have only such powers as are conferred upon them by statute. The English law relating to such actions constituted a part of the ecclesiastical and not of the common law of that country and has never been adopted by this State. (*Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456, 462-464; *Walker* v. *Walker*, 155 N. Y. 77, 80.) Hence, the power of the Supreme Court to grant a judgment of separation and of support for the wife and support and maintenance for the child is derived solely from the statutory law of this State.

In 1941, however, following a study made by the Judicial Council of the State of New York and pursuant to their recommendation, there was added to the Civil Practice Act a new section (L. 1941, ch. 249) reading as follows: " § 1170-a. *Custody and maintenance of children where divorce, separation or annulment denied.* Where an action for divorce, separation or annulment, or for a declaration of nullity of a void marriage, has been

tried and the court for any reason whatsoever, other than lack of jurisdiction, refuses to grant a judgment of divorce, separation or annulment or a judgment declaring the marriage a nullity, as the case may be, the court may, nevertheless, render judgment in the same action making such directions as justice requires, between the parties, for the custody, care, education and maintenance of any child of the marriage. The court, by order, at any time thereafter, upon the application of either party to the action, or of any other person or party having the care, custody and control of such child pursuant to such judgment, after due notice to the other, to be given in such manner as the court shall prescribe, may annul, vary or modify such directions.'' (See Seventh Annual Report of N. Y. Judicial Council, 1941, pp. 39, 40, 269–276.)

Under the provisions of that section, had the trial court refused to grant a judgment of separation for the reasons indicated in this opinion, the court might nevertheless have made the provision which it did for the custody, care and maintenance of the child of plaintiff and defendant.

The judgment of the Appellate Division should be modified by reversing so much thereof as affirms the judgment of the Special Term (1) decreeing plaintiff to be the lawful wife of defendant and (2) directing that she be separated from said defendant, and, except as so modified, affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgment accordingly.