Shientag, J.
The appellant, Elisabeth S. Bathscheck, appeals from that part of the decree of the Surrogate of the County of New York which disallows her claim for her distributive share, *364 as Ms widow, of the estate of the decedent. Decedent and appellant were married in Germany in 1933. In 1944, by their joint action, they obtained a Mexican “ mail-order ” divorce. TMs divorce decree, a certified copy of wMch was received in evidence, shows on its face that the appellant was the plaintiff in the Mexican proceeding. Concededly, neither of the parties in that action was a resident of Mexico at the time the divorce was granted or the proceedings there instituted, and neither left this State to go to Mexico to obtain that divorce. There is some testimony to the effect that after this divorce had been obtained the decedent and the appellant lived together for a brief period.
Furthermore, there was received in evidence a letter from the UMted States Department of Justice, Immigration and Naturalization Service, addressed to the Surrogate’s Court, certifying that when the decedent resided in New York City and filed his preliminary form of petition for naturalization on September 6, 1945, he alleged that he was married, that Ms wife’s name was Lee, and that they were married on June 19,1933, at Frankfurt, Germany; that Ms wife was bom at Saarbrucken, Germany, on September 16, 1910, and that he had no children. The description of the wife in that petition is that of the appellant in this proceeding.
In 1946, the appellant filed a second suit for divorce, this time in Queens County, New York. The husband, the decedent, was served in this State and appeared in the action, but filed no answer. In that action, the appellant asked for an adjudication that the Mexican divorce was void, and further asked for a decree of divorce on statutory grounds. She obtained an intei^ locutory decree of divorce in wMch it was adjudged inter alia that the Mexican decree was void. Before the New York decree of divorce became final, Edgar R. Rathscheck died.
The question presented on this appeal is whether the appellant is entitled, as widow of the decedent, to share in his estate.
Subdivision (b) of section 87 of the Decedent Estate Law provides as follows: “ No distributive share of the estate of a decedent shall be allowed under the provisions of this article, either * * * (b) or to a spouse who has procured without the state of New York a final decree or judgment dissolving the marriage with the decedent, where such decree or judgment is not recognized as valid by the law of this state ”.
TMs statute was enacted in 1929 on the recommendation of the Commission to Investigate Defects in the Law of Estates. The note which was presented to the Legislature by the commission in connection with the adoption of the statute reads in *365 part as follows: “ Without limitation as to effect, it is intended to be a declaration of the existing law. (Matter of Ensign, 103 N. Y. 284; Matter of Albrecht, 118 Misc. 737, 119 Misc. 554; Starbuck v. Starbuck, 173 N. Y. 503; Monroe County Savings Bank v. Yeoman, 119 Misc. 226.) It is inserted to serve as an aid to attorneys and public officials in the application of the provisions of this article. The word ‘ divorce ’ in subd. (a) is intended to include any judgment or decree which dissolves the marriage, upon whatever ground rendered, and is not intended to be limited in its application to a divorce on the ground of adultery. The words ‘ recognized as valid by the law of this state ’ are intended to mean the recognition by the highest court of this state of the validity of such a judgment or decree procured in this state, or in another state, or in a foreign country. At the present time a former husband or wife after an absolute divorce is not entitled to letters of administration or to a distributive share in the estate of the other.” (Combined Reports of the Decedent Estate Commission [Reprint ed.], p. 202.)
The statute should receive a reasonable construction, having in mind the purpose underlying its enactment. It was not in the nature of a penalty; it had a logical purpose. When it was enacted, it was the law that one spouse who had obtained a divorce from the other in another jurisdiction, the validity of which divorce would not be recognized in this State, would nevertheless be estopped from questioning that validity. It was logical to carry that estoppel into the Decedent Estate Law and to provide therein what was already law, namely, that the estoppel was not limited to the lifetime of the parties but operated after death and precluded the spouse so estopped from sharing in the estate of the spouse against whom she had obtained a divorce not here recognized as valid.
Since the enactment of this statute, decisions have been handed down by our highest court making a sharp, clear-cut distinction between a divorce obtained in another jurisdiction, which on the face thereof may be presumed to be valid although its validity may be attacked or questioned by the party who did not initiate the proceedings, and a so-called “ mail-order ” divorce in which there is not the slightest semblance of jurisdiction and which is therefore treated as void for all purposes. A party obtaining such a “ mail-order ” divorce is not estopped from questioning its validity; it has no legal effect.
In Caldwell v. Caldwell (298 N. Y. 146, 149-150) the Court of Appeals pointed out that a judgment of divorce of another State *366 “ has prima facie validity in our courts. The absent defendant spouse is customarily served in accordance with the requirements of procedural due process in the other State. Thus the decree is valid unless and until attacked by collateral evidence that the plaintiff was not in fact domiciled in the sister State at the time of its rendition. Prior to such collateral attack the judgment establishes a finding of actual residence of the successful party plaintiff for the requisite statutory period and also of the added mental ingredient necessary for the jurisdictional finding of domicile. Consequently, for the procurer of such decree to attack it collaterally, he must contradict under oath his own declarations as to domicile also made under oath in the sister State. In effect the procurer of the sister State divorce in order to attack it, must attempt to establish affirmatively in our courts that he succeeded in perpetrating a fraud upon the court of that sister State. To refuse to permit that is not unreasonable but is consonant with justice.”
However, and this is vital so far as the instant appeal is concerned, the Court of Appeals in the Caldwell case (supra, p. 150) went on to say: “ The reason for that rule [of estoppel or quasiestoppel] vanishes when we have presented to us a situation where two persons attempted to confer jurisdiction upon a court of a foreign nation by means of the execution of powers of attorney to counsel residing there and then forwarding such instruments by mail without ever visiting that nation or establishing their domicile there. This is the device which results in what we have come to denominate ‘ a mail-order divorce ’. There is not even the slightest semblance or color of jurisdiction justifying action by a court. The spouses here never submitted themselves to nor invoked the jurisdiction of a court of the foreign nation as we understand those terms. They violated our statute embodying our public policy (Domestic Belations Law, § 51). Their collusive agreement and conduct may not be the foundation for the creation of any rights.” (See, also, Vose v. Vose, 280 N. Y. 779; Querze v. Querze, 290 N. Y. 13; May v. May, 251 App. Div. 63; Senor v. Senor, 272 App. Div. 306.)
If, therefore, the Mexican divorce here involved was void from the standpoint of both parties, if both were free to treat it as invalid, it would be most illogical and unreasonable to have it form the basis of affecting the marital status and of depriving either spouse of the right to share in the estate of the other. It cannot be presumed that the Legislature, in enacting subdivision (b) of section 87 of the Decedent Estate Law, intended any such result. On the contrary, implicit in that statute and *367 underlying its enactment is the conception that if and only if a spouse is estopped from questioning the invalidity of a foreign decree, that spouse is likewise prohibited from sharing in the estate of the other.
What is a party to do who has obtained a Mexican divorce void on its face in order to preserve rights to share in the estate of the other? If the respondents’ argument is followed to its logical conclusion, there would have to be a remarriage of the parties. Even an adjudication of marital status, obtained in an action for declaratory judgment, holding a “ mail-order ” Mexican decree of divorce to be void and the party obtaining it not estopped from questioning its validity, apparently would not suffice, for that adjudication would be merely the pro forma judicial expression concerning what, in the eyes of the law, was already regarded and treated for all purposes, as an absolutely void divorce. In point of fact, there was here such an adjudication before the death of the decedent —■ an adjudication which did not require a three-month waiting period to become final, as is required in an action for divorce. Moreover, the evidence showed that the decedent regarded the appellant as his wife even after the Mexican “ mail-order ” divorce had been obtained by her.
On May 11, 1949 (Matter of Rathscheck v. Brass Rail, Inc., 275 App. Div. 882) after the instant appeal was argued, the Appellate Division of the Third Department handed down its decision in a Workmen’s Compensation case on an appeal from an award allowing death benefits to the present appellant as the widow of a deceased employee, the decedent in this case. The appellant’s employer and insurance carrier contended on the Workmen’s Compensation appeal that inasmuch as the claimant sought and obtained a Mexican divorce she is not barred from asserting its invalidity and is not entitled to the award as the widow of the decedent. The Appellate Division of the Third Department, in its decision, held:
“ The contention of the appellants has been definitely rejected by the Court of Appeals in Caldwell v. Caldwell (298 N. Y. 146). It was there held that so-called mail-order divorces where the parties never acquired any semblance of domicile in the foreign jurisdiction are absolutely void in every respect and cannot be made the basis of estoppel, even against the party who obtained such a divorce.
“ It follows that the claimant is the lawful widow of the decedent.”
*368 That holding, while not at all determinative of the question involved in this appeal, furnishes, nevertheless, a guidepost to its correct solution. It would be paradoxical to hold that the appellant in this case is the lawful widow of the decedent under the Workmen’s Compensation Law and would, for example, be entitled to the proceeds of a policy of life insurance in which the decedent had named his “ widow ” as the beneficiary, and at the same time say that, because she obtained a Mexican divorce which has not the slightest semblance of validity, she is to be penalized by virtue of subdivision (b) of section 87 of the Decedent Estate Law and not allowed her distributive share in the estate of the decedent. There is nothing in the history of the statute, or in its wording, taking into consideration the purpose for which it was enacted and the aims to be accomplished thereby, to compel such a construction, particularly when it would result in the anomalous situations to which reference has been made. It has been most appropriately said that 11 Consequences cannot alter statutes, but may help to fix their meaning. ” (Matter of Rouss, 221 N. Y. 81, 91, Cardozo, J.) Statutes should be reasonably construed to fit into a logical pattern of legal consequences. If this appellant concededly could not be estopped from questioning the validity of the “ mail-order ” divorce she obtained during the lifetime of the parties concerned, it would be a most strained construction of the statute to hold that nevertheless she is, in effect, estopped from questioning its validity after the death of her spouse. To paraphrase an observation of Mr. Justice Holmes, the general purpose is a more important aid to meaning than any rule which grammar or formal logic may lay down (United States v. Whitridge, 197 U. S. 135, 143; see, also, Johnson v. United States, 163 F. 30, 32; United States v. Hutcheson, 312 U. S. 219, 235). “ ‘ In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances. * * * It is the spirit and purpose of a statute which are to be regarded in its interpretation; and if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute. * * * ’ ” (Spencer v. Myers, 150 N. Y. 269, 275). “ Adherence to the letter will not be suffered to ‘ defeat the general purpose and manifest policy intended to be promoted ’ ” (Surace v. Danna, 248 N. Y. 18, 21; see, also, Chittenden Lumber Co. v. Silberblatt & Lasker, Inc., 288 N. Y. 396, 402; People v. Ryan, 274 N. Y. 149, 152).
*369 The determination of the Surrogate, so far as appealed from, should be reversed, with costs.