**MAGNER v. HOBBY.**

No. 221, Docket No. 22954.

United States Court of Appeals Second Circuit.

Argued April 5, 1954.

Decided July 13, 1954.

Swan, Circuit Judge, dissented in part.

J. Edward Lumbard, U. S. Atty. for the S. D. of New York, and Elliot H. Lumbard, New York City, for appellant.

Warren W. Wells, White Plains, N. Y., Roderick B. Travis, New York City, of counsel, for appellees.

Before CHASE, Chief Judge, and SWAN and FRANK, Circuit Judges.

CHASE, Chief Judge.

The appellees are a mother and her minor child who is under the age of eighteen and who claimed, as the wife and child respectively of George H. Magner, certain insurance benefits under the Social Security Act. The claims were denied and there was a final administrative affirmance of the denial by the Appeals Council of the Social Security Administration. The appellees then brought this suit.

The first cause of action is in behalf of the child for child's monthly benefits under §§ 202(d) and 216(e) of the Act, Sections 402(d) and 416(e) of Title 42 U.S.C.A.[1] The second cause of action is for monthly benefits, for the mother of

**1.** References to the statute are to the sections as renumbered following the Social Security Act Amendments of 1950 since those amendments made no changes which affect the issues now presented.

the child in her care, under § 202(g) of the Act, § 402(g) of Title 42 U.S.C.A.; and for a determination that when the mother, some years hence, becomes 65 years old she will be entitled to a widow's benefits under §§ 202(e) and 216(c) of the Act, Sections 402(e) and 416(c) of Title 42 U.S.C.A.

The pertinent facts are not disputed. George H. Magner was an insured wage-earner under the Act when he died on April 28, 1950. He was lawfully married to Louise W. Henke in 1911 and an adult child by that wife is living. The plaintiff mother was in 1922 lawfully married to Hubert W. Henke, a brother of Louise W. Henke. In 1934, while both couples were living in Mount Vernon, N. Y., they agreed among themselves that each wife would endeavor to obtain a Mexican divorce so that Mr. Magner and Mrs. Henke could get married. It was left to Mr. Magner to make arrangements to obtain such divorces at his own expense. On May, 22, 1934, he wrote to a Mexican lawyer at Juarez, Chihuahua, Mexico, who undertook to obtain both divorces for a stated fee. The lawyer sent papers to the parties in New York, including confessions of jurisdiction by the husbands, which were signed and returned to him. None of the parties established a residence in Mexico, none even went to Mexico. The lawyer obtained a divorce decree as of June 26, 1934, for each wife in a court at Juarez and sent them to the parties in New York. On June 30, 1934, Mr. Magner and Mrs. Henke, obtained a marriage license in Greenwich, Conn., and were married there by a Justice of the Peace on July 7, 1934, while his first wife was still living.

Thereafter they continued to reside in New York, living together as man and wife until Mr. Magner died. The appellee Carol Ann Magner, their child born on November 26, 1936, is now in the care of her mother who has been living in Rye, N. Y., since Mr. Magner died.

Mr. Magner made monthly payments to his first wife after the Mexican divorce and also to the son by her who survives him, the payments to the son having at first been made when he was a minor and having been continued for a time after he became of age.

■ We shall first deal with the claim of Alberta under § 202(g) as the mother of the child. The sole question raised as to that claim is whether she is a widow of the deceased as that term is defined in § 216(c) of the Act, 416(c) of Title 42 U.S.C.A., and as to that the only disputed point is whether a determination of family status pursuant to § 216(h) (1) of the Act, § 416(h) (1) of Title 42 U.S. C.A. shows her to be a widow. This section, insofar as now pertinent, provides that, in determining whether an applicant is a widow under the statute, the Administrator shall apply such law as would be applied by the courts of the state in which the insured individual was domiciled at the time of his death in determining the devolution of intestate personal property. As Mr. Magner was domiciled in New York when he died, the New York law is that to be applied by the Administrator in determining whether this appellee would be held by the New York courts to be a person entitled to inherit personal property as his widow. Sherman v. Federal Security Agency, 3 Cir., 166 F.2d 451. In New York personal property descends by intestate succession only to relatives of the decedent by blood or marriage. Section 83 of the New York Decedent's Estate Law, McK. Consol.Laws, c. 13; Matter of Lingren, 293 N.Y. 18, 55 N.E.2d 849, 153 A.L.R. 936. Thus, questions of estoppel aside, this appellee is entitled to the status of a widow under the Social Security Act only if the New York courts would recognize her as a person who was lawfully married to the decedent when he died. ·

Since Mr. Magner was lawfully married to his first wife, who was living at the time of his ceremonial marriage in Connecticut to the appellee, the decisive question is whether the Mexican divorce would be recognized by the New York courts as a dissolution of his valid first marriage that left him free to contract

the second. As this divorce was granted by a court in a foreign country there is no constitutional requirement that it be given the full faith and credit which should in one state be given to the judgment of a court of a sister state. It clearly appears that neither party to the divorce was domiciled in Mexico and the arrangements the parties made to obtain it were collusive and contrary to the public policy of New York in respect to the dissolution of marriages. Section 51 of the New York Domestic Relations Law, McK. Consol.Laws, c. 14. Harris v. Harris, 287 N.Y. 444; 40 N.E.2d 245; Murthey v. Murthey, 287 N.Y. 740, 39 N.E. 2d 941. We think it would be held by the New York courts to be a nullity. Caldwell v. Caldwell, 298 N.Y. 146, 81 N.E.2d 60; Querze v. Querze, 290 N.Y. 13, 47 N.E.2d 423; Vose v. Vose, 280 N.Y. 779, 21 N.E.2d 616. Thus the first marriage of Mr. Magner was in full force and effect when he contracted the ceremonial marriage with the appellee in Connecticut and any presumption which might otherwise be indulged as to the validity of that marriage was overcome.

■ We do not understand that the appellee disputes the invalidity in New York of the marriage in Connecticut but instead she relies on a theory of estoppel which would prevent an attack upon the presumed validity of the ceremonial marriage by proof of the invalidity of the Mexican divorce and the consequent continuation of the previous lawful marriage of the decedent to his first wife. That theory is as follows: This suit involving only the rights to social security benefits, only property rights growing out of the appellee's marriage to the decedent are in issue; and in New York a principle of divisible marriage is given effect under a theory of quasi-estoppel which would preclude reliance upon the invalidity of the Mexican divorce to invalidate the Connecticut marriage. For such a proposition, the appellee relies on Krause v. Krause, 282 N.Y. 355, 26 N.E. 2d 290, 292. In that case the wife sued the husband in an action for separate maintenance and one of the defenses interposed by him was the invalidity of the marriage because of his incapacity to contract it. He had been previously lawfully married and had been granted a divorce by a Nevada court which he sought to show was invalid as a step in showing that the subsequent marriage to the plaintiff was invalid. In holding that he was estopped from so doing the court in the majority opinion said in part,

"We cannot lose sight of the fact that the present defendant was himself the party who had obtained the decree of divorce which he now asserts to be invalid and repudiates in order that he may now disown any legal obligation to support the plaintiff, whom he purported to marry. To refuse to permit this defendant to escape his obligation to support plaintiff does not mean that the courts of this State recognize as valid a judgment of divorce which necessarily is assumed to be invalid in the case at bar, but only that it is not open to the defendant in these proceedings to avoid the responsibility which he voluntarily incurred.

"It is conceded that the estoppel which is invoked against the present defendant is not a true estoppel as that term is ordinarily understood, although the effect is the same in the case at bar."

Three years later, however, the Krause case was distinguished in Querze v. Querze, 290 N.Y. 13, 47 N.E.2d 423, 424, where a wife who had obtained a Mexican divorce by mail, though she had no domicile in Mexico, was allowed to show in a suit for an absolute divorce from her husband that the Mexican divorce was invalid even though the defendant husband had, subsequent to the Mexican divorce, married another woman in reliance upon it. The distinction then made was, as we think, between the assertion of a private claim or demand arising out of the marriage and a declaration of what effect, if any, the divorce had upon "the question of the existing marital status" of the

parties to the marriage, though we are not entirely sure about that or clear as to just what the difference is. The appellee, at any rate, would distinguish the Querze case from the instant one on the ground that here, as in the Krause case, the issue concerns property rights only and that what she calls the "rule of divisible marriage," would estop all parties in interest from contesting her right to inherit personal property under New York law as the widow of the decedent by showing that the Mexican divorce his first wife obtained was invalid. She would extend the estoppel to his son by his first wife, on the ground that the son received payments from his father pursuant to the agreement between the spouses who were parties to the Mexican divorce, even though he was not a party to the agreement. As the government would not be a party in interest to any proceeding in the New York courts to determine the right to inherit the decedent's personal property, her position is that the invalidity of the Mexican divorce could not be shown at all in such a proceeding and her status as the widow of the decedent would then be established by the presumption of the validity of the Connecticut marriage.

We do not find it necessary to explore the somewhat complicated legal theories upon which the appellee relies because in the decision in Caldwell v. Caldwell, supra, which was after both the Krause and Querze cases were decided, the Krause case was not followed. The Caldwell case was a suit by the alleged wife for separate maintenance, as was the Krause suit, and for the custody of her child by the defendant after her purported marriage to him. He was married to another woman when the parties to the suit planned to marry and, as part of the arrangements they made for so doing, obtained a Mexican divorce of the mail order variety. The question for decision was stated in the first paragraph of the opinion as follows:

"We have presented to us the question of whether any effect may be given by our courts to a divorce obtained by mail from a court of a foreign nation at the instance of one domiciled in this State." [298 N.Y. 146, 81 N.E.2d 61.] The defendant pleaded as one defense the invalidity of the Mexican divorce he had obtained. The trial court held, relying upon the Krause case, that he could not impeach the Mexican decree. The Appellate Division affirmed for the same reason, 272 App.Div. 1025, 73 N.Y.S.2d 683. But the Court of Appeals reversed as to that and answered the question above quoted in the negative. After referring to the Krause and Querze cases, among others, it said:

"To hold that one is estopped or precluded from showing the invalidity of a 'mail order divorce' is to allow such a void decree to affect, in some measure, the marital status of residents of this State. Mexico is one of our neighboring nations but no different rule may be applied to it than to a European, African or Asiatic nation. The legal profession and, indeed, the general public now recognize the valueless character of mail order divorces. To grant such a decree even the limited operative effect in this State urged by the plaintiff would be to abandon the legal position taken in the Vose and Querze cases".

We take this to mean that the Caldwell case is in accord with the Querze decision and also that a party to the divorce is not estopped to show in New York courts the invalidity of such a divorce as is here involved both on the issue of marital status itself and on the issue of property rights which are dependent upon the existence of marital status.

Consequently, the appellee has not established her status as a widow of the deceased wage-earner and insofar as the judgment rests upon that status it was erroneous.

■ The right, however, of Carol Ann to a child's benefits under §§ 202(d) and 216(e) is affected by another New York statute. It is § 1135 of the New York Civil Practice Act and insofar as pertinent provides as follows:

"Legitimacy of children. The following provisions govern the effect of declaring a marriage void or annulling a voidable marriage upon the legitimacy of children of the marriage:

\* \* \* \* \* \*

"6. If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

The appellant has taken the position that as the legitimacy of this minor child must be determined pursuant to the law of New York, Olmsted v. Olmsted, 190 N.Y. 458, 83 N.E. 569; Restatement, Conflict of Laws, Sections 34, 137, and there has been no determination by a court of that state having jurisdiction so to do, the child must, for present purposes, be considered illegitimate. And further that the only court having jurisdiction to make such a determination is the Supreme Court of New York in an action brought pursuant to Section 67 of the Civil Practice Act. Anonymous v. Anonymous, 174 Misc. 906, 22 N.Y.S.2d 598; Matter of Crook's Estate, 140 Misc. 721, 252 N.Y.S. 373. Be that as it may for other purposes, we cannot agree that the Administrator is without authority to make the determination for the purpose of making the required determination under § 416(h) (1) of Title 42 U.S. C.A. in the fulfilment of her duty to determine benefit status under the Social Security Act. Bloch v. Ewing, D.C., 105 F.Supp. 25. Cf. Atwater v. Ewing, D.C., 86 F.Supp. 47. That duty is to apply in the absence of any determination by the New York courts, "such law as would be applied" by them "in determining the devolution of intestate personal property" of the decedent in a proper action for such a determination in the state court. In so doing the Administrator should find the facts pertinent to a decision of legitimacy under Section 1135(6) of the Civil Practice Act. As such findings have not yet been made so far as now appears, it is necessary to remand for that purpose. The critical fact is whether when the marriage in Connecticut was performed the decedent entered into it in good faith in the belief that his former marriage and that of Alberta had been lawfully dissolved by the Mexican divorces.

Her effort to secure a declaration of her right to a widow's benefits upon attaining the age of 65 years was, in any event, premature since an application for a benefit must be filed not more than three months before the first month for which the applicant becomes entitled to such benefit. Section 202(j) (2) of the Act, 42 U.S.C.A. § 402 (j) (2); Luck v. Ewing, D.C., 84 F.Supp. 525. It is, however, without merit because of her failure to establish a widow's status for the reasons above stated.

Judgment reversed and cause remanded for further proceedings in conformity with this opinion.

SWAN, Circuit Judge (dissenting in part).

I agree that the judgment must be reversed and that the plaintiff Alberta can take nothing as widow of the deceased wage-earner. But I cannot agree that the cause should be remanded for further findings by the Administrator as to the status of the child plaintiff. Since the mail-order divorces were a nullity, the child was illegitimate. Section 1135 (6) would permit her to be "deemed the legitimate child" of her father, only if an

action of the character described had been brought and the judgment therein so determined. No such action was brought; hence she continued to be an illegitimate child. I do not believe that under New York law the Administrator may exercise the jurisdiction conferred upon the state court to affect her status. Consequently, I would direct that upon remand of the cause judgment be entered for the defendant.