MYRTLE SNOW, Appellant, v. CONSTANCE C. SNOW, as Executrix of HOWARD V. SNOW, Deceased, Respondent.

Second Department, July 28, 1959.

*R. L. Collins* for appellant.

*Myron Friedman* for respondent.

NOLAN, P. J. Appellant, Myrtle Snow, obtained a judgment of separation against her husband, Howard Snow, now deceased, on October 29, 1956. It was thereby provided that the husband pay, in lieu of weekly or monthly payments of alimony, " a lump sum " of $16,000, to be paid $3,500 within one week after the date of the judgment, $7,500 within six weeks after October 2, 1956, and the balance of $5,000 within one year after the date of the judgment. The husband died on October 23, 1957, having paid only $3,500. A claim for the unpaid balance having been rejected by the respondent, the executrix of his estate, this action was commenced for a money judgment.

The motion to dismiss the complaint was made on the ground that the Supreme Court had no jurisdiction of the subject matter of the action and on the ground that the complaint failed to allege sufficient facts to constitute a cause of action. It appears to have been granted on both grounds.

In granting the motion to dismiss the learned Justice at Special Term was of the opinion that if Howard Snow were alive, any claim for unpaid alimony under the terms of the judgment could not be made the basis of an independent action but would have to be made under section 1171-b of the Civil Practice Act. He concluded that since Howard Snow is dead and relief under section 1171-b is therefore unavailable, relief must be sought " under section 211 of the Surrogate's Court Act ". (13 Misc 2d 966, 967.)

In our opinion, the complaint was properly dismissed. Appellant does not seek relief in equity as a judgment creditor (cf. *Wetmore* v. *Wetmore,* 149 N. Y. 520), nor does she ask for a determination and declaration of her rights under the judgment.

Her action is, concededly, one at law to collect money claimed to be due and unpaid under a matrimonial decree directing payment of alimony. Concededly, also, no final judgment for the

amount claimed or for any part thereof has been entered pursuant to section 1171-b of the Civil Practice Act. We are in agreement with the Special Term that under such circumstances the action may not be maintained.

There is no question as to the jurisdiction of the Supreme Court to entertain an action on a judgment (see Civ. Prac. Act, § 484; *Harris* v. *Steiner,* 30 Misc. 624). However, in such an action it must appear that the judgment sued on is final, for a sum certain in money, that it may be enforced by execution, and that it is not subject to modification by the court which rendered it (*MacDougall* v. *Hoes,* 27 Misc. 590; *Matter of Van Beuren,* 33 App. Div. 158; 2 Freeman, Judgments [5th ed.], § 1065). The judgment which appellant seeks to enforce is obviously not of that character (Civ. Prac. Act, §§ 1170, 1171-b).

Prior to the enactment of section 1171-b of the Civil Practice Act in 1939, there were many decisions of the courts of this State to the effect that alimony accrued under a judgment in a matrimonial action could be collected by execution in the action under section 504 of the Civil Practice Act and its predecessor statute section 1240 of the Code of Civil Procedure (cf. *Miller* v. *Miller,* 7 Hun 208; *Thayer* v. *Thayer,* 145 App. Div. 268; *Doncourt* v. *Doncourt,* 245 App. Div. 91, affd. 275 N. Y. 470). Under those statutes only a *final* judgment for a sum of money or directing payment of a sum of money could be so enforced. However, judgments in matrimonial actions directing payment of alimony were viewed by the courts as final since they created vested property rights of which the wife could not be deprived (see *Walker* v. *Walker,* 155 N. Y. 77; *Livingston* v. *Livingston,* 173 N. Y. 377; *Krauss* v. *Krauss,* 127 App. Div. 740; *Cary* v. *Cary,* 168 App. Div. 939, affd. 217 N. Y. 670). Consequently, although it was held that authority to award temporary alimony and the means for its enforcement rested exclusively upon statutory provisions, different principles were applied to permanent alimony under a final decree which, when accrued, was considered to be in the nature of a judgment debt which could be docketed as a judgment and enforced by execution. (*Doncourt* v. *Doncourt, supra; Thayer* v. *Thayer, supra.*) Under that interpretation of the law, it is not surprising that there were also decisions which indicated that accrued, permanent alimony could be collected in an independent action brought to enforce the matrimonial decree (cf. *Shepherd* v. *Shepherd,* 51 Misc. 418, affd. 117 App. Div. 924; *Van Ness* v. *Ransom,* 215 N. Y. 557; *Farquhar* v. *Farquhar,* 172 App. Div. 242, 243; see *Matter of Curtis,* 188 App. Div. 470, affd. 228 N. Y. 534).

However, despite many decisions to the contrary, it had been definitely decided prior to the enactment of section 1171-b that a judgment directing the payment of alimony was subject to retroactive modification (see *Kirkbride* v. *Van Note,* 275 N. Y. 244; *Karlin* v. *Karlin,* 280 N. Y. 32), and whatever doubt may have remained as to the nature of such a judgment was definitely resolved by the subsequent amendment in 1948 of that section and others relating to relief in matrimonial actions (see L. 1948, ch. 212). Section 1170 now specifically states that the authority thereby provided to modify the provisions of judgments awarding alimony shall apply to unpaid sums or installments accrued prior to the application for such modification, and section 1171-b makes it abundantly clear that alimony decrees are no longer to be regarded as final until a judgment for the amount unpaid, *or such part thereof as justice requires,* shall have been entered *in the discretion of the court,* after application, on such notice as the court may direct, and that only after the entry of such a judgment may the award of alimony to the extent provided by the judgment so entered, be considered as final and conclusive. There can no longer be any doubt that alimony awarded by a matrimonial decree does not, when it comes due, become a judgment debt which may be enforced by execution, and that it may not be so considered until the award has been reduced through further proceedings to final judgment. What was said of temporary alimony, when past-due alimony awarded by a final decree was considered to be in the nature of a judgment debt, now applies with equal force to what was then referred to as permanent alimony. The right to award it and " the means for its enforcement * * * rest exclusively upon statutory provisions which are not to be extended by implication " (*Doncourt* v. *Doncourt,* 245 App. Div. 91, 92, *supra*; see *Walker* v. *Walker,* 155 N. Y. 77, *supra*; *Caldwell* v. *Caldwell,* 298 N. Y. 146, 152). The statute which creates the right also provides for relief by contempt and sequestration proceedings and to the extent that justice may require by the docketing of a final judgment pursuant to section 1171-b. Consequently, in our opinion these are the only means by which it is enforcible, and proceedings under section 1171-b are the only means by which a judgment may be entered which will be final, for a sum certain, and not subject to further modification. Once such a judgment has been entered it may be enforced by execution, or in any other manner provided by law for the collection of money judgments (Civ. Prac. Act, § 1171-b), and we see no reason why it should not be enforcible by an action at law, on the judgment in a case not prohibited by statute (Civ. Prac. Act, § 484).

We are not unmindful that section 1171-b specifically states that the relief thereby provided for is in addition to any and every other remedy to which the wife may be entitled under the law. That language must be read as referring to relief by way of sequestration or contempt proceedings, which were the only other remedies to which the wife was entitled when the section was enacted. Additional remedies, which were available when unpaid installments of alimony accrued under a matrimonial judgment were regarded as a judgment debt, had ceased to exist once it had been finally determined that the judgment in the wife's favor was subject to modification with respect to amounts due and unpaid thereunder (see *Karlin* v. *Karlin,* 280 N. Y. 32, *supra*). Neither have we overlooked the fact that the judgment which was the basis of the wife's claim in *Swanton* v. *Curley* (273 N. Y. 325) was not for a sum certain in money. In that case, however, relief was awarded on the basis of other facts which brought the wife's claim for reimbursement within the rule announced in *Laumeier* v. *Laumeier* (237 N. Y. 357). (See, also, *De Brauwere* v. *De Brauwere,* 203 N. Y. 460.)

Our dissenting brethren have expressed concern that our ruling may lead to an anomaly if applied to cases in which a husband who is in arrears in alimony payments cannot be served with process in this jurisdiction. We see no reason why the inability to make such service of process should necessarily offer any obstacle to the entry of final judgment pursuant to section 1171-b. An application under that section is treated as a motion in an action, so that service of new process is not required for the purpose of acquiring jurisdiction of the husband's person, as it would be if the alimony decree were sought to be enforced by means of an independent action (*Haskell* v. *Haskell,* 6 N Y 2d 79). All that is required under section 1171-b is such notice as the court may direct. Neither do we find any cause for concern that our ruling may indicate that judgments of our courts directing the payment of alimony may not be enforced by action in other jurisdictions, while they are subject to retrospective modification in this State. There is no reason why we should expect that such judgments would be enforcible by action in other States while they are subject to modification here. The rule which is followed in this State (see *Rossi* v. *Rossi,* 187 Misc. 543, affd. 269 App. Div. 821), and generally in other jurisdictions, is that a judgment for alimony granted in one State may be enforced in another State to the extent of the amount due and unpaid on the decree, and not subject to reduction (Restatement, Conflict of Laws, § 464). No ruling which we might make in this case could in any way affect the application of that rule in other

jurisdictions. Enforcement of our matrimonial decrees for alimony in other States may be assured, however, by the entry of final judgments thereon, pursuant to section 1171-b (U. S. Const., art. IV, § 1).

The decision at Special Term to the effect that relief could not be available to appellant in this case under section 1171-b because her husband is dead follows our decision in *Kahler* v. *Searl* (261 App. Div. 936). It may be that we should re-examine that determination in the light of the clarification in 1948 of our statutes relating to matrimonial actions (L. 1948, ch. 212). That question need not be determined, however, on this appeal.

The orders should be affirmed, with one bill of $10 costs and disbursements.

WENZEL, J. (dissenting). Prior to the enactment of section 1171-b of the Civil Practice Act in 1939 (L. 1939, ch. 431, eff. Sept. 1, 1939), an independent plenary action could be brought to recover accrued and unpaid alimony which had been awarded in a judgment in an action for divorce or separation (see *Swanton* v. *Curley,* 273 N. Y. 325; *Van Ness* v. *Ransom,* 215 N. Y. 557; *Shepherd* v. *Shepherd,* 51 Misc. 418, affd. 117 App. Div. 924; *Miller* v. *Miller,* 7 Hun 208), and, apart from that remedy, execution could be issued upon such judgment for the accrued and unpaid alimony (*Shepherd* v. *Shepherd, supra*; *Miller* v. *Miller, supra*). It had further been held, as to the said remedy of execution, that the better practice was to apply to the court for a direction that the amount due be docketed first and that execution be issued thereafter upon the amount thus docketed (*Thayer* v. *Thayer,* 145 App. Div. 268). The unpaid amount was regarded as " in the nature of a judgment debt " (*Thayer* v. *Thayer, supra,* p. 269) and the awarding of the alimony made the husband " in effect a debtor owing his wife the amount adjudged and determined by the decree " (*Wetmore* v. *Wetmore,* 149 N. Y. 520, 528). It was also the law prior to the enactment of section 1171-b that the power of the court under section 1170 of the Civil Practice Act to annul, vary or modify the alimony provisions was a power that could be exercised retrospectively (*Karlin* v. *Karlin,* 280 N. Y. 32) and that the duty of the court to annul an award of alimony in a judgment of divorce in the event of the wife's remarriage, under present section 1172-c of the Civil Practice Act, was also a power that could be exercised retrospectively (*Kirkbride* v. *Van Note,* 275 N. Y. 244). The purpose of the enactment of section 1171-b was to overcome the rule that deprived a wife of the ability to enforce collection of arrears of temporary alimony after the entry of final judgment (*Treherne-Thomas* v. *Treherne-Thomas,* 267 App. Div. 509; *Durlacher* v. *Durlacher,* 173 Misc.

329). The section gave the court power to direct entry of judgment for arrears of alimony under a " judgment or order ". By thus coupling the new remedy as to temporary alimony with the old remedy as to an award of alimony in a judgment, the Legislature at the same time codified the said old remedy as to the award of alimony in a judgment which was discussed in *Thayer* v. *Thayer* (145 App. Div. 268, *supra*). The Legislature did not by that enactment intend to alter any other rule of law or practice. As the enactment itself read, and as it still does, " The relief herein provided for is in addition to any and every other remedy to which the wife may be entitled under the law ". As originally enacted and until the 1948 amendments of the section (L. 1948, ch. 212), the section did not expressly provide that the court had power to decline to direct the docketing of the amount of the arrears of alimony, or any part of the full amount of the arrears. However, it was not necessary to make provision with respect to that in the section in order to assure such power in the court. The court already had this power under the rulings in the *Karlin* and *Kirkbride* cases (*supra*), according to decisions in the Second, Third and Fourth Departments of the Appellate Division, exemplified by *McCanliss* v. *McCanliss* (268 App. Div. 138), *Kahler* v. *Searl* (259 App. Div. 729), *Cunningham* v. *Cunningham* (261 App. Div. 973), *Van Dusen* v. *Van Dusen* (258 App. Div. 1020), *Eisinger* v. *Eisinger* (261 App. Div. 1031) and *Gehring* v. *Gehring* (262 App. Div. 1065). It was only for the purpose of dispelling the confusion created by decisions to the contrary, that is, decisions prior to the said 1948 amendments of section 1171-b, that those amendments were enacted. The decisions in the First Department were to the effect that under that section (prior to the 1948 amendments) it was mandatory for the court to grant an application for the docketing of all unpaid and accrued alimony, without power of modification (see *Treherne-Thomas* v. *Treherne-Thomas,* 267 App. Div. 509, *supra*; see, also, 1948 Report of N. Y. Law Rev. Comm., p. 249 *et seq.*). These amendments thus merely confirmed what had theretofore been the general rule, that the court had power to modify alimony retrospectively. As above stated, the provision that the section was not intended to alter any other remedy, that is, that the relief provided therein was only " in addition to " other existing remedies, compels the conclusion that the Legislature did not intend to abolish the remedy of the independent plenary action which had been recognized in *Swanton* v. *Curley* (273 N. Y. 325, *supra*), *Van Ness* v. *Ransom* (215 N. Y. 557, *supra*), *Shepherd* v. *Shepherd* (51 Misc. 418, affd. 117 App. Div. 924, *supra*) and *Miller* v. *Miller* (7 Hun 208, *supra*).

In *Griffin* v. *Griffin* (327 U. S. 220, 226), which was decided in 1945, prior to the said 1948 amendments, the Supreme Court of the United States recognized that a New York alimony decree (specifically, one made in 1926) was "subject to some power of modification *nunc pro tunc* as to alimony accrued but unpaid up to the time of modification", and nevertheless held that, despite that power of modification, an independent plenary action could be brought to recover arrears under the alimony award. The court remanded the action to the District Court of the District of Columbia to allow proceedings to be taken there for litigation of a claim for arrears accruing after October 25, 1935 on the 1926 award. As above demonstrated, an alimony award was as much subject to modification prior to the 1948 amendments to section 1171-b as thereafter, and the decision in the *Griffin* case (*supra*) is therefore authority that the nature of the vulnerability of an alimony award to possible modification is not such as may be said to vitiate the right to an independent plenary action upon the award. The ruling of the majority on this appeal may lead to an anomaly, if applied to cases in which a husband who is in arrears in alimony cannot be served with process in this jurisdiction. The inability to serve process upon him here would be an obstacle to the wife's procuring the docketing of a judgment in the matrimonial action, and, by the majority ruling, an action could not even be brought against him in the jurisdiction where he could be served. Thus, the wife would probably be deprived of all effective remedies.

The orders should be reversed and the motions should be denied.

HALLINAN and KLEINFELD, JJ., concur with NOLAN, P. J.; WENZEL, J., dissents and votes to reverse the orders and to deny the motions in opinion in which MURPHY, J., concurs.

Orders affirmed, with one bill of $10 costs and disbursements.