Chief Judge Desmond (concurring in part).
Although for reasons hereafter stated I would not void past-granted Chihuahua divorces, I emphatically reject the proposition that New York State must continue to recognize these one-day decrees awarded to our residents in manner and on theories repugnant to our basic ideas.
There is no justification in positive law, public policy, natural justice or morals for a validation by this court of the practice of some of the citizens of our State of going to Mexico for divorces of the sort attacked on these appeals. My vote against recognizing them for the future is based on these self-evident propositions:
1. Divorce decrees rendered in foreign countries and purporting to dissolve New York marriages are entitled to recognition and effect in New York State only when such recognition is consistent with the public policy of our State (Gould v. Gould, 235 N. Y. 14, 29; Rosenbaum v. Rosenbaum, 309 N. Y. 371, 375; see Russian Republic v. Cibrario, 235 N. Y. 255, 259; Martens v. Martens, 284 N. Y. 363, 365). The Gould case (supra) is illustrative. There the New York courts upheld a divorce granted in France but only because the parties had actually lived for years in their Paris home and the decree was granted after an actual court contest without collusion and on a ground recognized in New York, that is, adultery.
2. Mexican “bilateral” divorces where one party crosses a bridge from El Paso, Texas, spends a day in Juarez and, by arrangement, the other appears by attorney, followed by a pro forma one-hour court appearance with no real hearing, or persuasive evidence or independent judicial determination lack almost all the elements which New York State considers requisites for a valid divorce. The residence requirements of the State of Chihuahua are minimal and inadequate to form a recognizable domiciliary jurisdictional base since in Mexico and contrary to our views neither spouse need have a true or real *76 domicile in Mexico (see Williams v. North Carolina, 325 U. S. 226, 229-230; Estin v. Estin, 296 N. Y. 308, 312, affd. 334 U. S. 541). Domicile as the law uses the term means a fixed, permanent and principal home to which a person wherever temporarily located always intends to return (Black’s Law Dictionary, 4th ed.).
3. No attention is paid in Juarez divorces to the principle, fundamental with us, that marriage is an institution in which the public as a third party has a vital interest (Fearon v. Treanor, 272 N. Y. 268; Maynard v. Hill, 125 U. S. 190; 2 Bishop, Marriage, Divorce and Separation, § 480). The Mexican State does not concern itself with maintenace of the marriage or reasons for its dissolution. In these latter respects the one-day judgments here attacked differ in no essential respect from the mail-order writs described in Caldwell v. Caldwell (298 N. Y. 146).
4. Such decrees are blatantly and obviously the fruit of consensual divorce arrangements and as such are forbidden by New York public policy statute (now General Obligations Law, § 5-311; see Caldwell v. Caldwell, 298 N. Y. 146, 150, supra; Viles v. Viles, 14 N Y 2d 365).
5. Although there is a line of lower court decisions in the State upholding these “ Chihuahua” decrees (e.g., Leviton v. Leviton, 6 N. Y. S. 2d 535, 254 App. Div. 670) they are, so we are told and so it would seem, refused recognition everywhere else (see Warrender v. Warrender, 42 N. J. 287; Golden v. Golden, 41 N. M. 356; Bobala v. Bobala, 68 Ohio App. 63; Bethune v. Bethune, 192 Ark. 811; Griswold, Divorce Jurisdiction and Recognition of Divorce Decrees—A Comparative Study, 65 Harv. L. Rev. 193; 1 Rabel, Conflict of Laws [2d ed., 1958] p. 513). Approval of these lower court decisions puts our State in the uneasy and inappropriate position of sole acceptor of Mexican “ quickie ” divorces. The suggestion in the majority opinion that these trial court and Appellate Division decisions, together with the fact that Mexico has issued numerous divorces to New Yorkers, plus the fact of advices by New York attorneys to their clients, force this court into a totally wrong public policy is a suggestion that answers itself. We are forgetting that the public policy of this State as to divorce “ exists to promote the permanency of the marriage *77 contracts and the morality of the citizens of the state ” (Hubbard v. Hubbard, 228 N. Y. 81, 85).
Of course, it is in the modern manner to shrug off all this, to ask what is the difference between a one-day ‘ ‘ domicile ’ ’ in Juarez and a six weeks’ “ domicile ” in Beno, to pile scorn and ridicule on New York’s one-ground divorce law as archaic, cruel or worse. The approach is too facile. For 160 years New York as a State has recognized one cause only for divorce (Domestic Relations Law, § 170) and has refused to approve the practice of its domiciliaries going to other jurisdictions to evade our laws by obtaining divorces after short sojourns and on grounds not cognizable here (Jackson v. Jackson, 1 Johns. 424 [1806]). This official position of our State stands not on mere parochialism but on some of the oldest and deepest-felt sentiments of humanity. As Lord Mansfield wrote long ago: “Matrimony was one of the first commands given by Grod to mankind after the Creation, repeated again after the Deluge, and ever since echoed by the voice of nature to all mankind.” Seventy-seven years ago in Maynard v. Hill (125 U. S. 190, 205, supra) the United States Supreme Court referred to marriage as creating the most important relation in life and as having more to do with the morals of a civilized people than any institution, and pointed out that while marriage is in a sense a contract, it “ ‘ partakes more of the character of an institution controlled by public authority, upon principles of public policy, for the benefit of the community ’ ” (Justice Field at pp. 205 and 213 of 125 U. S.). There can be no doubt that this speaks the public policy of .our State to be changed only by the people through Constitution or statute. No court is licensed to write a new State policy, however attractive or convenient. As to divorces gotten in other States of the Union we are constrained to recognition by modern constructions of the Federal full faith and credit clause. But when asked to recognize divorces rendered in foreign countries we as a court have neither right nor need to look beyond our own declared and unmistakable State policy (Martens v. Martens, 284 N. Y. 363, 365, supra; Caldwell v. Caldwell, 298 N. Y. 146, supra).
As to analogizing the one-day Mexican divorce to the six weeks’ Nevada decree, the first and ready answer is that judg *78 meats from other States are given faith and credit here because the Federal Constitution so commands. The second answer is a substitution of the true analogy, that is, between one-day foreign divorces and post-card foreign divorces, as between which there is no logical or real difference at all (see Warrender v. Warrender, 79 N. J. Super. 114, affd. 42 N. J. 287, supra).
It is suggested, too, that a Juarez divorce is some sort of official “ act of State ” of a sovereign foreign power and, as such, safe from our scrutiny or ban. That might be so as to Mexico divorcing her own citizens. But our recognition of any foreign judgments is a mere act of official courtesy, implying no surrender of our own sovereignty. There is no compulsion. Were we to give credit to these Mexican judgments we would as a court be turning our backs on New York’s restrictive divorce policy and allowing the divorce of our own citizen-residents by a foreign government having no interest in the marriage res.
For these reasons I vote for a declaration that such divorces are void, but I am not bound to and do not vote to give this ruling any more than prospective effect. I cannot shut my eyes to the realities. Tens of thousands of such purported divorces have been granted to New Yorkers who acted on advice of attorneys who relied on 25 years of decisions by the New York lower courts. No social or moral purpose would now be served by ruling that marriages long ago dissolved are still in existence, and the result would be destructive to the present homes, marriage and lives of those who remarried on the strength of Juarez decrees. This court has a clear right to give our ruling prospective effect only (see Lyon v. Richmond, 2 Johns. Ch. 51; Harris v. Jex, 55 N. Y. 421; Great Northern Ry. v. Sunburst Co., 287 U. S. 358; Linkletter v. Walker, 33 U. S. L. W. 4576) and justice and fairness dictate that we should do so and refuse to allow these plaintiffs or others to attack collaterally such past-rendered Mexican “ one-day ” divorces.
None of the other points made by counsel requires discussion herein.
In each case the order should be affirmed, with costs, but with the clear understanding that divorces of this sort granted after the date of the decision of these appeals will be void in New York State.