Shirley POLOTTI, on behalf of herself, and on behalf of her infant son, Charles F. Polotti, Plaintiff,

v.

Marion B. FOLSOM, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 18283.

United States District Court
E. D. New York.

Nov. 14, 1957.

H. Elliot Wales, New York City, for plaintiffs, motion for summary judgment and in opposition to defendant's motion for summary judgment.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., by James M. Fitzsimons, Asst. U. S. Atty., New York City, of counsel, for defendant's motion for summary judgment and in opposition to plaintiff's motion for summary judgment.

RAYFIEL, District Judge.

These are cross motions for summary judgment.

The plaintiff brings this action under Sec. 405(g) of Title 42 U.S.C.A. in her own behalf and in behalf of her infant son to review the decision of the Social Security Administrator, denying their claims for Social Security benefit payments.

The facts, which are undisputed, follow: On October 27, 1926 Louis Polotti, the wage earner, married one Theresa Marie Geraci in the church of St. Thomas Aquinas of Flatlands, in Brooklyn, New York. On March 25, 1931 she obtained a decree of divorce against him from the General Court of the First Instance, Fifth Judicial District, State of Morelos,

Mexico. Neither of the parties appeared personally before the court, and the divorce is one of those commonly referred to as a Mexican "mail order" divorce. In 1944 the said Theresa Marie Geraci remarried.

Sometime in 1943 the plaintiff met the wage earner, and, in 1948, commenced keeping company with him. They both resided in Staten Island, New York. In March, 1951, they decided to marry, and went to the Office of the City Clerk in Staten Island to obtain a marriage license. The application which they were required to fill out contained questions respecting their marital status, including inquiries concerning the wage earner's divorce. When he disclosed that his first marriage had been terminated by a Mexican divorce they were told by the Clerk that by reason thereof they could not marry in New York, but he suggested that they could procure a license and be married in Bayonne, New Jersey. About two weeks thereafter they went to Bayonne, obtained a license, and on March 28, 1951 were married in a civil ceremony. They then lived together in Staten Island as husband and wife, and on January 3, 1953 a son, Charles, the infant claimant herein, was born. On February 2, 1956 the wage earner died, and the plaintiff made application for Social Security benefits for herself and her infant son. Initially, the Social Security Administration issued a Certificate of Social Insurance Award, certifying that the plaintiff and her infant son were entitled to benefits of $77.70 each per month, based upon a determination that a legal relationship existed between the plaintiff and the wage earner. Thereafter the plaintiff received a letter from the Social Security Administration, dated February 11, 1957, wherein she was informed that Social Security benefits were denied to her and her son for the reason that the wage earner's first marriage was terminated by a Mexican "mail order" divorce, and, therefore, that her marriage to the wage earner was not legally valid.

The plaintiff, feeling aggrieved by such determination, requested a hearing be-

fore a Referee of the Social Security Administration. The hearing was held on October 9, 1957. The Referee, in a decision dated November 7, 1957, found that the marriage of the plaintiff and the wage earner was void by reason of the invalidity of the wage earner's Mexican divorce from his first wife, who was living and that the plaintiff's son, the infant claimant herein, was illegitimate, and he affirmed the disallowance of the claims. This action was then commenced by the plaintiff.

■ Counsel for the plaintiff contends that the Social Security Administrator, having once made an award of Social Security benefits to the plaintiff and her infant son, could not reverse his determination, and deny the right to benefit payments. He bases his argument on Section 404(b) of Title 42 U.S.C.A., which reads as follows:

"There shall be no adjustment or recovery by the United States in any case where incorrect payment has been made to an individual who is without fault * * * and where adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

That argument is without merit. Section 404(b) merely denies the Government the right to recover benefit payments theretofore made by the Administrator in error, where the claimant was without fault. It does not prevent the Administrator from correcting or denying an award erroneously made by him.

I come now to the question of the validity of the wage earner's marriage to the plaintiff, for, if that marriage was void by reason of the invalidity of the wage earner's Mexican divorce, she is not entitled to receive Social Security benefits on his death. The Referee found that neither New York nor New Jersey recognizes the validity of so-called Mexican "mail order" divorces, and cited the leading cases in New York and New Jersey to that effect. (See transcript of record of proceedings before the Social Security Administration, p. 10). He also found that because of the invalidity of the wage earner's divorce his first marriage was never terminated, and the wage earner and the plaintiff were never validly married, and, therefore, that she is not entitled to recover Social Security benefits. I am of the opinion that those findings of the Referee are supported by substantial evidence, and, hence, are conclusive under Sec. 405(g) of Title 42 U.S.C.A.

The Referee also found that because of the invalidity of the second marriage the child born to the wage earner and the plaintiff is illegitimate, and is therefore not entitled to any Social Security benefits, since Section 416(h) of Title 42 U.S.C.A. provided that the family relationship existing between the wage earner and the child is determinable by the law of the state of their domicile, in this case, New York. This State holds that the wage earner's child can share in his estate only if the child is legitimate, according to the law of the State of New York. See In re Cady's Estate, 257 App. Div. 129, 12 N.Y.S.2d 750, affirmed 281 N.Y. 688, 23 N.E.2d 18.

■ The Referee has found that the child was illegitimate, despite the language of Section 1135 of the New York Civil Practice Act, which states: "Legitimacy of children. The following provisions govern the effect of declaring a marriage void or annulling a voidable marriage upon the legitimacy of children of the marriage:

"1. * * *
"2. * * *
"3. * * *
"4. * * *
"5. * * *
"6. If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the former marriage had been an-

nulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

The Referee bases his conclusion on his finding that neither the wage earner nor the plaintiff "contracted their marriage in good faith in the belief that his former wife was dead or that his former marriage had been annulled or dissolved. Nor does it appear that the claimant (plaintiff) was an innocent party thereto, having no knowledge of the wage earner's former marriage." (Transcript of record of proceedings before Social Security Administration, p. 10).

In my opinion the finding of the Referee is in error. The record is replete with statements by the plaintiff that she believed that her husband's divorce was a valid one, and that she entered into the marriage in good faith. Among them are the following:

Page 34

"Q. Did you have any reason to believe subsequent to your marriage to Louis Polotti that his divorce would be subject to criticism as to its validity? A. No, I had no reason to believe so.

"Q. When you married Louis Polotti in 1951 did you believe that you were entering into a valid marriage which would not be subject to legal attack? A. Yes, I did.

Pages 44 and 45

"Q. When did you first learn about his marital background, that is, whether he was married or single? A. Not until we started going steady in 1948 that he had told me that he had been married before and divorced.

"Q. What did he tell you about his prior marriage or divorce? A. Nothing outside that he had a Mexican divorce.

"Q. Did he give you any of the details of the divorce, that is, how he procured it, whether he hired a lawyer? A. No.

"Q. Whether he went to Mexico? A. No. No, in fact I had not even seen the papers up until Social Security questioned it, and I had to look for them. I didn't even know where they were at the time. I had not seen them.

"Q. Did he ever tell you the details of his divorce—how he obtained it, when he obtained it? A. No.

"Q. Did you ever ask him for the details? A. No, I didn't.

"Q. Did you ever ask him why he procured a divorce in a foreign country, in Mexico, instead of procuring his divorce in this country? A. No, I never questioned him on it.

Page 48

"Q. In view of the fact that you and your husband appeared to have been lifelong residents of the State of New York, and all of your close relatives lived either on Staten Island or Brooklyn, why did you and Louis go to Bayonne to get married instead of being married on Staten Island? A. When we went to apply for the license they told us that in New York we couldn't get one but if we went to Bayonne we would be able to—not that we wouldn't be recognized in New York. We were not aware of that at that time.

Page 49

"Q. At that point the clerk said something about not being able to issue the license? A. At the time he asked him whether he wanted to see the papers. He said, no, that he didn't get it at all, that we wouldn't be able to get it on Staten Island.

"Q. Did he say why? A. He said at the time that they had not recognized the Mexican divorce. My husband said, 'If I bring the papers down would you see them? There may be an exception to the rule'. He said he wouldn't take the time.

"Q. Then, I presume, you and Louis had a conversation as to what you could do when you found you could not get a license on Staten Island? A. The clerk suggested that if we wanted we could go

to Bayonne and we wouldn't have any trouble.

Pages 50 and 51

"Q. After you and Louis were advised by the marriage clerk on Staten Island that he would not recognize a Mexican divorce and, therefore, would not issue a marriage license to you, did you consult with any lawyer? A. No, we didn't think we had to because at the time my husband heard his ex-wife had been married again, and he did not think our marriage would be invalid, since she had gotten a marriage license and remarried. He thought nothing would stop him at the time. The divorce took place in 1931, and he married in 1951."

■ Despite this uncontradicted testimony, the Referee found that the plaintiff did not enter into the marriage with wage earner in good faith, and stigmatized the child as illegitimate and not entitled to obtain Social Security benefits. As I see it, the Referee's finding is not supported by substantial evidence, as is required by Section 405(g) of Title 42 U.S.C.A.

The only cases reported under Section 1135(6) of the New York Civil Practice Act pertaining to Social Security benefits are Magner v. Hobby, 2 Cir., 215 F.2d 190, Magner v. Folsom, D.C., 153 F.Supp. 610, and Roston v. Folsom, D.C., 158 F. Supp. 112, 117.

Neither of those cases covers the precise situation we have here. The Magner cases held that the Administrator had the power, in proceedings under the Social Security Act, to exercise the same discretion under Section 1135 of the New York Civil Practice Act that the New York Supreme Court would have in annulment proceedings, and remanded the case to the Social Security Administration for findings and a determination pursuant to the said section. The Roston case is distinguishable since Judge Bruchhausen held that the finding of bad faith in that case was "overwhelmingly supported by the record".

It is my opinion that the finding of bad faith herein is not supported by the record before the Referee. The wage earner's first wife obtained the Mexican divorce and, admittedly, remarried, a fact which the wage earner knew and communicated to his prospective second wife prior to their marriage. I can find no basis in the record for charging the plaintiff, as does the Referee, with bad faith, because of her failure to consult a lawyer after being advised by a clerk in Staten Island that he could not issue a marriage license because of the wage earner's Mexican divorce, particularly so since this same clerk told them that they could be married in Bayonne, New Jersey, without any difficulty, a course which they followed.

■ Mindful as I am of the rule that the presumption of legitimacy is one of the strongest known to the law (Commissioner of Public Welfare of City of New York, on complaint of Vincent v. Koehler, 284 N.Y. 260, 30 N.E.2d 587, In re Perrins' Estate, 258 App.Div. 384, 17 N.Y.S. 2d 494), and should be indulged in whenever circumstances warrant (In re Bilotta's Estate, Sur., 110 N.Y.S.2d 331, affirmed 281 App.Div. 887, 120 N.Y.S.2d 248), I conclude that the Referee erred in finding that the child born to the wage earner and the plaintiff was illegitimate.

The motions are disposed of as follows:

The plaintiff's motion for summary judgment is granted in so far as it concerns the infant Charles Polotti, as to whom the decision of the Secretary is reversed; in all other respects the motion is denied.

The defendant's motion for summary judgment is granted in so far as it concerns the claim of the plaintiff Shirley Polotti, suing on her own behalf, and as to her, the decision of the Secretary is affirmed; in all other respects the motion is denied.

Settle order on notice.