Shirley POLOTTI, on behalf of herself and on behalf of her infant son, Charles F. Polotti, Plaintiff-Appellee,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 117, Docket 25605.

United States Court of Appeals Second Circuit.

Argued Jan. 11, 1960.

Decided April 26, 1960.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. New York, Brooklyn, N. Y. (James M. FitzSimons and Lawrence S. Levine, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for appellant.

H. Elliot Wales, New York City, for appellee.

Before CLARK, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

This action was brought in the United States District Court for the Eastern District of New York under Section 205 (g) of the Social Security Act, 42 U.S. C.A. § 405(g), to review a final decision, adverse to plaintiff, of the Secretary of Health, Education and Welfare. The court below granted plaintiff's motion for summary judgment insofar as to hold

that Charles F. Polotti was the "child" of the deceased wage earner, Louis Polotti, and therefore was entitled to child's insurance benefits under Section 202(d), 42 U.S.C.A. § 402(d).[1] The opinion of the district judge is reported at 167 F. Supp. 809 (1958) sub nom. Polotti v. Folsom. The defendant, the Secretary of Health, Education and Welfare, appeals from the district court judgment.

Under Section 216(h) (2) of the Act, 42 U.S.C.A. § 416(h) (2), to qualify for child's benefits the claimant must demonstrate such a relationship to the deceased wage earner as would entitle the child to share in the wage earner's intestate personal property under the laws of the state where the wage earner was domiciled at his death. It is agreed that, at his death, Louis Polotti was domiciled in New York, and that, under New York law,[2] an illegitimate child cannot inherit personal property from his father. This case, therefore, hinges upon Charles Polotti's status as a legitimate son of Louis Polotti under New York law.

The facts are undisputed. On October 27, 1926, Louis Polotti entered into a valid marriage with Theresa Geraci. Difficulties arose and in 1931 the two consulted an attorney seeking to have their marriage dissolved. A so-called "Mexican mail order divorce" was obtained that year. It is agreed that divorces of this type are not recognized as valid in New York, see Magner v. Hobby, 2 Cir., 1954, 215 F.2d 190, 192–194, certiorari denied 348 U.S. 919, 75 S.Ct. 305, 99 L. Ed. 721, or in New Jersey, Tonti v. Chadwick, 1949 1 N.J. 531, 64 A.2d 436. Thirteen years later, in 1944, Louis Polotti began his courtship of the present Shirley Polotti. In that same year Polotti's wife Theresa remarried. In 1948 Louis Polotti informed Shirley of his former marriage and divorce and of his former wife's remarriage. Sometime in mid-March 1951, at a time when Louis Polotti was forty-four years of age and Shirley was twenty-six, the two sought to obtain a marriage license from the Office of the City Clerk at Staten Island, New York, where they both lived. On being told of Polotti's mail order divorce, the clerk informed the couple that they could not be married in New York but that a marriage license could be obtained without difficulty in New Jersey. Approximately two weeks later the couple went to Bayonne, New Jersey, where, after making full disclosure of the mail order divorce, a license was obtained. On March 29, 1951 at Bayonne they went through a marriage ceremony, and as man and wife lived together on Staten Island until Louis Polotti's death on February 2, 1956. Their child, Charles Polotti, was born January 3, 1953.

■ The parties further agree that the status under New York law of the child Charles Polotti is to be determined by Section 1135, subd. 6 of the New York Civil Practice Act. If this case had been a case of first impression, the applicability of Section 1135, subd. 6 might well have presented a difficult legal problem; but heretofore, in three cases involving legitimacy under New York law, federal courts have held that in determining eligibility for child's benefits the Social Security Administration has the same power to declare legitimate the offspring of a bigamous ceremonial marriage as would a Justice of the New York Supreme Court sitting in an annulment action. Atwater v. Ewing, D.C.E.D.N.Y. 1949, 86 F.Supp. 47; Bloch v. Ewing, D.C.S.D.Cal.1952, 105 F.Supp. 25; Magner v. Hobby, 2 Cir., 1954, 215 F.2d 190, 195, certiorari denied 348 U.S. 919, 75

1. Mrs. Polotti not only sought review in the district court of the Secretary's adverse decision upon her claim on behalf of her son Charles for child's insurance benefits, but she also sought review of an adverse decision upon her claim in her own behalf to obtain mother's insurance benefits under Section 202(g), 42 U.S.C. A. § 402(g). District Judge Rayfiel held that Mrs. Polotti was not entitled to mother's benefits under the Act, and this holding has not been appealed.

2. See McKinney's Consolidated Laws of New York, Decedent Estate Law, § 83, and cases cited in notes 89 and 92 thereto.

S.Ct. 305, 99 L.Ed. 721. In the absence of contrary New York authority subsequent to Magner we are unwilling, at this late date, to consider this legal question *de novo.*

When the claim for child's benefits was disallowed by the Social Security Administration Mrs. Polotti obtained a hearing before a referee of the Administration. In his decision, filed November 7, 1957, the referee sustained the disallowance. He found under Section 1135, subd. 6 that neither Louis Polotti nor Shirley Polotti had entered into the marriage believing in good faith that the marriage would be valid. Two reasons were given to justify the finding of lack of good faith: first, the referee's understanding that New York law charged laymen with knowledge of the invalidity of mail order divorces, and second, the failure to consult an attorney after the couple had been refused a marriage license in New York. The district court upon the petition to review held that the referee's finding as to Shirley Polotti's lack of good faith was not supported by substantial evidence.

■■■ The Government's first contention on this appeal is that the district court erred in determining legitimacy on the basis of the good faith of Shirley Polotti. Instead, the Government argues, legitimacy must hinge on the good faith of the wage earner, Louis Polotti. A close analysis of Section 1135, subd. 6 demonstrates that this argument fails. The section consists of two sentences. The first sentence reads as follows:

"If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract."

Standing alone this sentence supports the government contention, for the child Charles Polotti in order to prevail must be shown to be the legitimate son of the wage earner, and the wage earner concededly was incompetent to contract his second, or subsequent, marriage because his first marriage had never been legally dissolved. However, the second sentence of the section, couched in permissive language, reads as follows:

"* * * If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

With respect to this second sentence two matters are clear. First, by use of the phrase "such subsequent marriage" reference back is had to the preceding sentence, so that, for the court to have power to declare legitimate the children of a void marriage, it is necessary that at least one of the parents entered into the void marriage in good faith. But, second, if this condition is met, the court, in its discretion, may declare a child of the void marriage to be the legitimate child of *either* parent, irrespective of the other parent's competence to contract or of his good faith. We conclude that the court below correctly interpreted the statute. Accord, Magner v. Flemming, D.C.S.D.N.Y.1959, 172 F.Supp. 299, 303.

■■■ Second, the Government contends that the referee's finding as to Shirley Polotti's lack of good faith was supported by substantial evidence, and hence, under Section 205(g) of the Act, 42 U.S.C.A. § 405(g), immune from judicial reversal. We agree with the district court that there was no substantial evidentiary support for this finding. See 167 F.Supp. 809, at pages 812–813. The referee's finding was based in part upon the belief that New York law charg-

ed parties such as Shirley Polotti with knowledge of the invalidity of mail order divorces. Neither In re Shuff's Estate, 1934, 151 Misc. 754, 272 N.Y.S. 418, 419, cited by the referee, nor Caldwell v. Caldwell, 1948, 298 N.Y. 146, 151, 81 N.E.2d 60, cited to us by the Government, supports this proposition. In neither case was the court faced with a defense based upon good faith. And in both cases the litigants had had a part in procuring the mail order divorce. Furthermore, in both cases, the language relied upon does not support the far-reaching interpretations the referee and the Government have placed upon it.

 The importance which the referee placed upon Shirley Polotti's failure to consult an attorney, see 167 F.Supp. 809, at page 813, seems to have resulted from a mistaken view of the legal connotations of the phrase "good faith." In New York, as elsewhere, "good faith" connotes an actual state of mind—a state of mind motivated by proper motive. Doyle v. Gordon, Sup. 1954, 158 N.Y.S.2d 248. The fact that a person could have adopted a more prudent course than the course taken does not prevent him from establishing that the course taken was one taken in good faith. In this case we find the evidence of good faith to be unequivocal. Shirley Polotti was considerably younger than Louis Polotti, and presumably relied throughout upon his judgment. She had no connection whatever with the procurement of the Mexican mail order divorce, and it is uncertain whether she knew any of its details beyond the fact that it posed legal problems in New York. Moreover, in the referee's decision we find no indication that she was sophisticated in legal matters. Any disquiet she may have experienced as the result of the inability to obtain a marriage license in New York could well have been dispelled by the clerk's simultaneous assurance that a license could be obtained in New Jersey. In the face of this evidence, and the referee's errors of law in reaching a contrary result, we affirm the district court's finding that Shirley Polotti in marrying Louis acted in good faith.

 We agree with the Government that in view of the conceded validity of Polotti's first marriage and the conceded invalidity of his divorce and remarriage, the conventional presumption of legitimacy was not enough in itself to control. However, the broad public policy implicit in that presumption strongly suggests that under New York law a judge having discretionary power under the final sentence of Section 1135, subd. 6 to "decide that a child of the marriage is * * * legitimate * * *" would not reach a contrary decision without substantial grounds for such an exercise of discretion. We find no such grounds in the record here.

Affirmed.