Selma Rosenbaum, Respondent, *v.* Salo Rosenbaum, Appellant.

Argued June 8, 1955; decided December 1, 1955.

*Benjamin Shedler* and *Bernard B. Rubin* for appellant.  I. A decree issued by a Mexican court which purports to grant the husband a divorce from his nonappearing spouse who was served in the foreign action in New York, the domicile of both parties, is invalid and does not warrant the intercession of a court of equity to prevent the husband from obtaining such a decree.  (*Goldstein* v. *Goldstein,* 283 N. Y. 146; *Baumann* v. *Baumann,* 250 N. Y. 382; *Garvin* v. *Garvin,* 302 N. Y. 96; *Williams* v. *North Carolina,* 317 U. S. 287, 325 U. S. 226; *Martens* v. *Martens,* 284 N. Y. 363; *Gaskell* v. *Gaskell,* 189 Misc. 504; *Pereira* v. *Pereira,* 272 App. Div. 281; *Greenberg* v. *Greenberg,* 218 App. Div. 104.)  II. The facts in the instant case do not warrant a change in the established law.  (*Goldstein* v. *Goldstein,* 283 N. Y. 146; *Witkowski* v. *Witkowski,* 271 App. Div. 901, 297 N. Y. 626; *Raynor* v. *Raynor,* 279 App. Div. 670; *Goldberg* v. *Goldberg,* 265 App. Div. 946; *Levy* v. *Levy,* 149 App. Div. 561; *Imbrioscia* v. *Quayle,* 278 App. Div. 144, 303 N. Y. 841.)

*Marvin George Florman* for respondent. I. A court of equity has the power to restrain defendant from prosecuting an action in a foreign country where it was fraudulently instituted, or where its purpose is to evade the laws of this State or a decree of our courts. (*Greenberg* v. *Greenberg,* 218 App. Div. 104; *Garvin* v. *Garvin,* 302 N. Y. 96; *Williams* v. *North Carolina,* 317 U. S. 287, 325 U. S. 226; *Hammer* v. *Hammer,* 278 App. Div. 396, 303 N. Y. 481; *Thompson* v. *Samson United Corp.,* 203 Misc. 48; *Richman* v. *Richman,* 148 Misc. 387; *Jeffe* v. *Jeffe,* 168 Misc. 123; *Dublin* v. *Dublin,* 150 Misc. 694; *Johnson* v. *Johnson,* 146 Misc. 93; *Forrest* v. *Forrest,* 2 Edm. Sel. Cas. 180; *Sullivan* v. *Sullivan,* 271 App. Div. 1016; *Pereira* v. *Pereira,* 272 App. Div. 281.) II. Defendant's divorce and subsequent remarriage could prejudice and impair plaintiff's present rights, and will place upon her a burden of proof in future litigation. There is a presumption of validity of a second marriage, which will conflict with plaintiff's status as defendant's wife, and impose upon her the burden of proving the invalidity of the second marriage. (*Matter of Dugro,* 261 App. Div. 236, 287 N. Y. 595; *Earle* v. *Earle,* 141 App. Div. 611; *Garvin* v. *Garvin,* 302 N. Y. 96; *Imbrioscia* v. *Quayle,* 278 App. Div. 144, 303 N. Y. 841; *Pereira* v. *Pereira,* 272 App. Div. 281; *Hammer* v. *Hammer,* 278 App. Div. 396, 303 N. Y. 481.) III. Defendant's remarriage would create certain rights in the second " wife " to plaintiff's damage. (*Krause* v. *Krause,* 282 N. Y. 355; *Williams* v. *North Carolina,* 325 U. S. 226; *Richman* v. *Richman,* 148 Misc. 387; *B. Gertz, Inc.,* v. *Beyer,* 206 Misc. 657.) IV. The majority opinion below is in complete harmony with the public policy of this State. (*Garvin* v. *Garvin,* 302 N. Y. 96; *Hammer* v. *Hammer,* 303 N. Y. 481; *Pereira* v. *Pereira,* 272 App. Div. 281.) V. Injunctions are granted where the foreign suit evades the law of the local State or where equity and good conscience require it. (*Cole* v. *Cunningham,* 133 U. S. 107; *Pitcairn* v. *Drummond,* 216 Ind. 54; *Knapp* v. *Knapp,* 12 N. J. Mis. Rep. 599; *Wells* v. *Wells,* 230 Ala. 430; *Ballard* v. *Ballard,* 199 Miss. 316; *Hartford Acc. & Ind. Co.* v. *Bernblum,* 112 Conn. 583; *Kahn* v. *Kahn,* 325 Ill. App. 137; *Stultz* v. *Stultz,* 24 N. J. Super. 354; *Usen* v. *Usen,* 136 Me. 48; *Borda* v. *Borda,* 44 R. I. 337.) VI. The doctrine of comity in New York does not deny recognition of Mexican divorce

decrees, other than mail order, where on the face thereof it appears jurisdiction was acquired by the Mexican court. (*Caldwell* v. *Caldwell*, 298 N. Y. 146; *Martens* v. *Martens*, 284 N. Y. 363; *Matter of Fleischer*, 192 Misc. 777.)

FROESSEL, J. This is an action solely for an injunction. It was brought by plaintiff to enjoin defendant, and all others acting on his behalf, from proceeding with the prosecution of an action for divorce commenced by him against plaintiff herein in the First Civil Court, Juarez, Mexico. The Supreme Court at Special Term denied plaintiff's motion for a temporary injunction and, upon defendant's motion under rule 106 of the Rules of Civil Practice, dismissed the complaint. The Appellate Division has reversed the orders of Special Term, and in granting leave to appeal has certified the following question: " Does the complaint herein state facts sufficient to constitute a cause of action for injunctive relief? "

From the allegations of the complaint herein, which we must assume are true, the parties are husband and wife, they have resided continuously in New York, and were separated by a decree of the Supreme Court, New York County, which awarded plaintiff $9,000 a year for her support as well as for the support of the two infant children of the marriage. We must further treat as fact that defendant appeared in Mexico on November 5, 1954, solely for the purpose of signing divorce papers and not for the purpose of residing there, remaining at all times a resident and domiciliary of New York State, wherein he continues to reside and practice his profession, and that he has been physically present here since November 7, 1954. In the concluding paragraph plaintiff alleges that she " has no adequate remedy at law ".

The issue thus raised is, simply, whether the drastic remedy of injunction may be employed to restrain the prosecution of a concededly invalid divorce action in a foreign country, namely, Mexico. Insofar as *sister State* divorces are concerned, we have held in *Hammer* v. *Hammer* (303 N. Y. 481 [Florida divorce]) and in *Garvin* v. *Garvin* (302 N. Y. 96 [Virgin Islands divorce]) that upon the facts there presented an injunction may issue.

The rationale upon which such injunctions have been allowed

is as follows: Since the Supreme Court of the United States, in 1942, decided *Williams* v. *North Carolina* (317 U. S. 287; see, also, 325 U. S. 226), and there overruled *Haddock* v. *Haddock* (76 App. Div. 620, affd. 178 N. Y. 557, affd. 201 U. S. 562), such *sister State* divorces granted to plaintiffs domiciled in such States — provided '' the requirements of procedural due process '' are met (317 U. S. 303) — are entitled to a presumption of validity under the '' full faith and credit '' provision of the Federal Constitution (art. IV, § 1). Moreover, in the *Hammer* case (*supra*), the husband submitted '' numerous facts tending to show that he has transferred his domicile to that [sister] State '' (278 App. Div. 399), and in the *Garvin* case (*supra*), which was an action for separation, there was an opposing affidavit by the husband's attorney attempting to show that the Virgin Islands residence was not sham — factors lending added strength to the presumption of validity under the '' full faith and credit '' doctrine which would attach to resulting decrees. Each such divorce, therefore, has the semblance of being something other than a complete nullity, such as we have here, where defendant does not even deny plaintiff's clear allegations. Hence in the *Garvin* case we held that an injunction may issue to save the rights of the nonappearing spouse and guard her against '' the heavy burden of striking down the prima facie effect of the foreign [sister State's] court's finding of residence '' (302 N. Y. 102).

However, we have never held that any such presumptive legality and validity must be accorded Mexican divorces — which are, of course, beyond the scope of '' full faith and credit '' (see *Caldwell* v. *Caldwell*, 298 N. Y. 146, 149; *Gaskell* v. *Gaskell*, 189 Misc. 504). Judgments of courts of foreign countries, we said in *Martens* v. *Martens* (284 N. Y. 363, 365), '' differ from judgments of courts of our sister States to which, by constitutional mandate, full faith and credit must be given. They must not contravene our public policy ''. Thus, under comity — as contrasted with full faith and credit — our courts have power to deny even prima facie validity to the judgments of foreign countries for policy reasons, despite whatever allegations of jurisdiction may appear on the face of such foreign judgments.

Our Legislature has expressly declined, in section 397 of the

Civil Practice Act, to declare the "effect" of a judgment of a foreign country beyond authorizing our courts to receive such judgment as "evidence" under section 395 of the Civil Practice Act — obviously because it recognized that the full faith and credit clause of our Federal Constitution was inapplicable to such judgments. It is therefore clear that the recognition of a foreign country judgment is far less certain, the judgment itself is far more assailable and vulnerable, than sister State judgments, and is subject to a test of policy. There is thus no significant basis for treating sister State and foreign country divorce judgments as identical in legal effect within this State.

In our opinion, the question as to whether an injunction may issue to restrain defendant from prosecuting this Mexican divorce action — a clear legal nullity under the allegations of plaintiff's complaint, and of no more validity than a so-called mail-order divorce, from which we said "no rights of any kind may spring" (*Caldwell* v. *Caldwell, supra,* p. 151) — is controlled by valid precedent in our court. Prior to the first *Williams* case (*supra*) (1942), when *Haddock* v. *Haddock* (*supra*) was still good law with respect to foreign decrees in general, a Florida divorce suffered virtually the same fate in New York State as does a Mexican decree of the type sought by defendant here. In 1940, we denied an injunction to a wife who sought to restrain her husband from proceeding with such a Florida divorce and whose allegations of nonresidence, as here, were not denied by the husband (*Goldstein* v. *Goldstein,* 283 N. Y. 146).

Virtually the same arguments which are presently raised by plaintiff concerning the alleged practical effects or annoyance which would be caused her by a legally invalid Mexican decree had theretofore been argued successfully before the Appellate Division, First Department, in *Greenberg* v. *Greenberg* (218 App. Div. 104 [1926]) and were submitted to this court by the plaintiff in the *Goldstein* case (*supra*) fourteen years later (see 283 N. Y. 147). However, we there rejected the reasoning of the *Greenberg* case (*supra*) and denied the injunction (283 N. Y. 148).

On the facts pleaded here, defendant is attempting to prosecute a divorce in a foreign country which would not be entitled to "full faith and credit" in this State — precisely the situa-

tion we faced with respect to sister State divorces as they were regarded prior to the *Williams* case (*supra*). What we decided under those circumstances is controlling here.

Plaintiff need not go to any foreign jurisdiction. If, in fact, defendant obtains a Mexican divorce and thereupon enters into a subsequent marriage, plaintiff need have no fear for her property rights and marital status under New York law (*Imbrioscia* v. *Quayle*, 278 App. Div. 144, affd. 303 N. Y. 841; *Goldstein* v. *Goldstein, supra*). A simple action for declaratory judgment, when all the facts may be fully developed, is at all times available to her (see *Baumann* v. *Baumann,* 250 N. Y. 382; *Lowe* v. *Lowe,* 265 N. Y. 197), the expenses of which may be assessed against defendant (Civ. Prac. Act, § 1169-a). As we said in the *Baumann* case (*supra,* p. 389), " Under such circumstances the acts enjoined do not constitute legal wrongs, which invade substantial legal rights of the plaintiff that can be recognized in law and protected by injunction." Since plaintiff thus has an adequate remedy under section 473 of the Civil Practice Act, equity should refrain from granting the drastic relief of injunction.

The orders of the Appellate Division should be reversed and those of Special Term reinstated, without costs. The question certified should be answered in the negative.

CONWAY, Ch. J. (dissenting). The question here presented is whether the complaint states a cause of action for injunctive relief.

The allegations of the complaint, pertinent to the issue, are set forth in Judge FROESSEL's opinion and need not be repeated here.

The relief prayed for is that defendant and his agents and attorneys be permanently and perpetually enjoined from prosecuting the Mexican action for divorce and that he be similarly enjoined *pendente lite.*

It is said that no injunction may issue, that plaintiff need have no fear for her property rights and marital status under New York law, that a simple action for declaratory judgment is at all times available to her and that, under the circumstances, it is an adequate remedy. While we agree that plaintiff may institute a suit for a declaratory judgment should defendant obtain a Mexican divorce, we disagree with the conclusion that

it is an adequate remedy or one which excludes the necessity for injunctive relief.

In *Garvin* v. *Garvin* (302 N. Y. 96), this court held that an injunction may be obtained in this State to restrain the prosecution of a divorce action in a sister State, or in a United States possession or territory. The theory of the case is that the spouse who remains in New York should not be required to wait until the foreign court has rendered a decree of divorce and then have to bear the burden of overcoming, in a subsequent declaratory judgment action, the *prima facie effect* of the foreign court's finding of residence by the spouse who appeared in such jurisdiction. The plaintiff there claimed that her husband had left for the Virgin Islands; that his stay in the Islands was intended to be temporary only, for divorce purposes, and that any alleged residence there was a sham. It is clear that if plaintiff were correct in those assertions any divorce decree which the husband might have obtained in the Virgin Islands would have been void under the second case of *Williams* v. *North Carolina* (325 U. S. 226). That is, assuming those allegations as true, under the second *Williams* case (*supra*) the Virgin Islands decree would have been a legal nullity from which no rights of any kind could spring. Nevertheless, we authorized the issuance of an injunction in such a case. It cannot be said that in so doing we were motivated by differences in the burden of proof required in a declaratory judgment action for, in reality, none exists. In an action for an injunction the nonappearing spouse must prove that the other spouse *is* not a bona fide domiciliary of the sister State where the action for the divorce is being prosecuted. In an action for a declaratory judgment such spouse must prove that the other spouse *was* not a bona fide domiciliary of the sister State. In both actions the burden of proof rests upon the plaintiff. In both actions plaintiff must prove her case by a fair preponderance of the evidence. Insofar as the burden of proof in the two kinds of action is concerned the so-called prima facie effect of the sister State decree might well be said to be of no moment for, in order to obtain relief in the injunction action the plaintiff must prove, by a fair preponderance of the evidence, that defendant *is* not a bona fide domiciliary of the sister State and in the declaratory judgment action the plaintiff must prove, by a fair preponderance of the

evidence, that defendant *was* not a bona fide domiciliary of the sister State. The lack of bona fide domicil must be established in each case since the United States Supreme Court has said that the power to grant a valid divorce rests upon domicil (*Williams* v. *North Carolina, supra,* pp. 227, 229).

What we intended to point out in the *Garvin* case (*supra*), when we spoke of the prima facie validity of the sister State decree, was the fact that a sister State divorce decree is entitled to a presumption of validity and, once it is procured, the wife " to save her rights as wife, will have to bring a new suit to set aside the foreign decree ". (*Garvin* v. *Garvin, supra,* p. 102.) Until such time as the wife successfully maintains a collateral attack on the sister State decree by way of a declaratory judgment action, such decree is, for all practical intents and purposes, valid and the procuring spouse may use it to jeopardize the rights of the other spouse.

By permitting the aggrieved spouse to apply for injunctive relief in this State, we also spare her the physical and financial hardship of making a journey to a foreign jurisdiction to present her defense.

We fail to perceive why we should not with more justification afford the same relief to a spouse who is aggrieved as a result of her spouse's going into a *foreign country* to seek a decree of divorce in such country. That will affect her in a greater degree both physically and financially.

In the present action, defendant's Mexican petition alleges that he is a resident of Mexico " and in that virtue you are thereby competent to hear and try my case ". The Mexican decree, therefore, will undoubtedly carry the recital of Mexican residence. While it may be possible for plaintiff to have such decree declared invalid in a declaratory judgment action brought by her, the invalidity of the decree will not be plainly apparent on its face. In *Williams* v. *North Carolina* (325 U. S. 226, 229–230, *supra*) the United States Supreme Court declared: " Under our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil. * * * Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicil of one spouse within a State gives power to that State, we have

held, to dissolve a marriage wheresoever contracted.'' We cannot say, therefore, that a Mexican decree of divorce founded upon the domicil of one of the spouses is invalid for lack of jurisdiction. Until a sister State divorce decree is proved to have been rendered by a court lacking jurisdiction it can have an injurious effect on the rights of the nonappearing spouse. It is a voidable decree, i.e., one which is valid until declared invalid. The same must be said of a Mexican decree which recites residence (cf. *Caldwell* v. *Caldwell,* 298 N. Y. 146, 148, where there was no claim of residence).

It is true that our Federal Constitution does not require our courts to accord presumptive legality and validity to Mexican judgments or decrees. Nevertheless, as early as 1862 this court, announcing the decisional law of this State, declared in *Lazier* v. *Westcott* (26 N. Y. 146) that a judgment obtained in a foreign country is conclusive, so far as to preclude a retrial upon the merits and that the defendant can impeach it only by proof that the court had not jurisdiction of the subject matter or of his person, or that the judgment was fraudulently obtained. And, in *Gould* v. *Gould* (235 N. Y. 14, 27) which concerned itself with a foreign divorce decree, we quoted favorably from *Hilton* v. *Guyot* (159 U. S. 113, 167–168) as follows: '' A judgment affecting the status of persons, *such as a decree* confirming or *dissolving a marriage,* is recognized as valid in every country, unless contrary to the policy of its own law. *Cottington's Case,* 2 Swanston, 326; *Roach* v. *Garvan,* 1 Ves. Sen. 157; *Harvey* v. *Farnie,* L. R. 8 App. Cas. 43; *Cheely* v. *Clayton,* 110 U. S. 701. It was of a foreign sentence of divorce, that Lord Chancellor NOTTINGHAM, in the House of Lords, in 1688, in *Cottington's Case,* above cited, said: ' It is against the law of nations not to give credit to the judgments and sentences of foreign countries, till they be reversed by the law, and according to the form, of those countries wherein they were given. For what right hath one kingdom to reverse the judgment of another? And how can we refuse to let a sentence take place till it be reversed? And what confusion would follow in Christendom, if they should serve us so abroad, and give no credit to our sentences.' '' (Emphasis supplied.)

The grounds, then, for overturning a foreign judgment are the same as those for overturning the judgment of a sister State

with the additional qualification that a foreign judgment will not be recognized if it contravenes our public policy. If there is jurisdiction in the foreign court and the judgment does not contravene our public policy such a judgment will be accorded recognition. The burden of proving that such a judgment does contravene our public policy, like the burden of proving lack of jurisdiction, is on the plaintiff, of course (see *Gould* v. *Gould, supra*).

The Mexican decree to be procured here will not be invalid until it has been declared so. Like a sister State decree it is voidable only. Until it is declared void it has effect and will be as injurious and harmful to plaintiff's rights as a decree obtained in a sister State.

It is no answer to plaintiff's problem for us to declare on this appeal that the Mexican decree defendant will procure will be " a clear legal nullity ". That conclusion follows only because we must take as true *on this motion* the allegation in the complaint that defendant appeared in Mexico on November 5, 1954, solely for the purpose of signing divorce papers and not for the purpose of residing there, remaining at all times a resident and domiciliary of New York State. In the declaratory judgment action plaintiff will have to prove that allegation. As I have already shown, if plaintiff's complaint alleged a sham residence in a sister State rather than in Mexico, we would authorize injunctive relief despite the fact that a decree so procured would likewise be " a clear legal nullity ". The hazards of both decrees flow from their voidable nature. If we deny plaintiff the right to injunctive relief we will be placing her in a position where she cannot prevent a so-called " legal nullity " from coming into existence, yet in order to have this " legal nullity " so adjudged she will have to prove, in an action for a declaratory judgment, the self-same allegations presently before us. In the interim her rights may be seriously impaired as a consequence of the existence of the Mexican decree which, on its face, appears to be valid. As the Appellate Division has said in this case: " Time has shown us that there are many uses to which such a judgment may be put to cause a wife expense and litigation. It is of little help to tell the wife that the foreign decree is invalid and she has nothing to fear; that she may subsequently commence an action for a declaratory judgment. We

have only to look at the present record to find the facts that cause vexation and difficulty not only to the parties but to the courts. Here, the husband in his answering affidavit complains about the permanent alimony allowed in the separation action although he did not appeal from the decree providing for such payments. He states that it amounts to 35% of his net income before taxes for the year 1953 and 42% thereof for the year 1954. Yet, he is willing and anxious to enter upon another marital venture. It must be recognized from experience that in such event the court will be met with the problem upon a motion to reduce the amount of permanent alimony as to the division of a stated amount of income between the former wife on the one hand and the husband and present wife on the other.''

It is traditional for equity to restrain persons from doing acts which will work an injury to others, and are for that reason contrary to equity and good conscience. We should not permit defendant to injure plaintiff upon the theory that a cure in the form of a declaratory judgment is at all times available to plaintiff when experience demonstrates that it is, at best, an inadequate and incomplete cure.

The order of the Appellate Division should be affirmed.

DYE, FULD and VAN VOORHIS, JJ., concur with FROESSEL, J.; CONWAY, Ch. J., dissents in an opinion in which DESMOND and BURKE, JJ., concur.

Orders reversed, etc.