HELENE ARPELS, Respondent, *v.* LOUIS ARPELS, Appellant.

First Department, December 8, 1959.

*Charles Roden* of counsel (*Richard L. Russell* with him on the brief; *Sol A. Rosenblatt*, attorney), for appellant.

*Milton S. Gould* of counsel (*Arthur S. Friedman* and *Martin London* with him on the brief; *Gallop Climenko & Gould*, attorneys), for respondent.

BERGAN, J. This is a suit to restrain by injunction the maintenance in France of an action for divorce. The defendant husband is a native and a citizen of the Republic of France; the plaintiff wife is a native of Monaco, now living in New York, but an alien and concededly subject to French law in respect of the subject matter of the French suit.

The parties were married in France in 1933 and lived there until the war period in 1940 when they came to New York. After the war was over they renewed contacts with France where the husband had owned, and continues now to own, a "substantial residential property" and which he maintains "as a permanent place of residence" on "a full year-round basis, with servants".

The wife alleges she is now domiciled in New York, but her papers do not show where. She alleges the husband is also domiciled in a New York hotel; but he shows without dispute that he has business interests in France; that he spends substantial time in his permanent place of residence in France and elsewhere outside of New York, while his "only place of dwelling in New York is at the Plaza Hotel". The husband has business interests in New York upon which he also spends substantial parts of his time. Plaintiff also has maintained personal contacts with France and her own affidavit shows she was personally within the jurisdiction of the French court, "temporarily sojourning" in Paris in October, 1958 when the French action for divorce was instituted against her.

While the parties were in the United States an action for judicial separation was instituted in the New York Supreme Court by the wife upon which a judgment was entered November 1, 1954 in her favor "consented to as to form and substance" by the husband's attorneys. The judgment incorporated part of a separation agreement between the parties which provided $18,000 annually for the support of the wife and which also provided, as to support, that the obligation would survive any action for divorce; and if an action for divorce were instituted in New York "or in any other jurisdiction" the agreement would be incorporated in any judgment entered, on approval of the court taking jurisdiction, and the wife would make no application for additional alimony or counsel fees.

The agreement also provided for the maintenance by the husband of an insurance policy of $10,000 on his life, of which the wife was beneficiary; but in respect of this it was agreed that if there was a divorce in any jurisdiction against the wife on grounds recognized in New York, this part of the obligation should terminate. It is clear that the obligation to pay $18,000 a year, however, was to survive any such judgment.

The court at Special Term has denied defendant's motion to dismiss the complaint and has granted the plaintiff's motion for a temporary injunction. This order opens to consideration the basic question of New York's judicial policy in respect of injunctive restraint upon access to a foreign court in a marital suit by a party concerning whose marital rights there has been a prior New York adjudication.

In some circumstances restraint upon such access will readily follow; but it ought to be equally clear that there are other circumstances in which the injunctive process will not readily be made available; and still others in which it will not be allowed at all.

The practice of allowing injunctive relief against marital suits in other jurisdictions grew up largely because of the nature and complexity of the Federal structure of the United States; where on one hand there was easy mobility from State to State and one of the parties to a marriage could by moving across a State line and changing his residence carry with him a part of a divisible marital domicile which in turn is a factor in the power to adjudicate rights resting on the marriage; and on the other hand where every State was bound by the Constitution to give full faith and credit to judgments granted by other States. The injunctive process became a useful instrument to the protection of the marital relationship and to judgments based thereon.

The decision in *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226) imposed a compulsion on State courts in the recognition of matrimonial judgments rendered in other States which led New York to make available injunctive relief because of the danger to the marital status of our own citizens that such recognition implied.

Indeed, equitable intervention seemed the most adequate available relief against the "tangled marital situations" which FRANKFURTER, J., noted arise as an incident to living in a Federal union "where citizens pass freely from one state to another" bringing with either party, on acquiring a new State residence, jurisdiction over the marital status of both (*Williams* v. *North Carolina*, 317 U. S. 287, 304). In New York this situation was met on frank ground by allowing an injunction. (*Garvin* v. *Garvin*, 302 N. Y. 96; *Hammer* v. *Hammer*, 303 N. Y. 481; cf. *Caldwell* v. *Caldwell*, 298 N. Y. 146.)

But before the *Williams* decision, and during the period when, in reliance on *Haddock* v. *Haddock* (201 U. S. 562), New York regarded itself competent to look upon the acceptance and recognition of matrimonial judgments of other States affecting New York residents as a question of comity, guided by our own policy, the injunctive process was very sparingly allowed; and it is to be noted that it was usually denied. (See, e.g., *Goldstein* v. *Goldstein*, 283 N. Y. 146, which rested in part on *Haddock*, and *Guggenheim* v. *Wahl*, 203 N. Y. 390.)

Our former judicial policy in relation to the effect of divorces in other States was stated in *Hubbard* v. *Hubbard* (228 N. Y. 81, 85): "Whether or not the operation of a foreign decree of divorce * * * will contravene the policy or wrong or injure citizens of the state is exclusively for its courts to determine. They are the final judges of the occasions on which the exercise of comity will or will not make for justice or morality".

This policy of sparing use of the injunctive process has been continued since *Williams* v. *North Carolina* in respect of matrimonial proceedings in foreign countries where we still may exercise the right, as we formerly did as to other States, to accept or not accept the judgment as a matter of policy and comity (*Rosenbaum* v. *Rosenbaum*, 309 N. Y. 371).

And we have always, as a matter of course, exercised a very large measure of discretion in determining the effect we will accord to matrimonial judgments of other countries. We examine closely the jurisdiction of the court over the parties and the subject matter, and, indeed, sometimes "scrutinize" the "acts of the parties". (*Martens* v. *Martens*, 284 N. Y. 363, 366, SEARS, J.)

The basis of recognition of judgments of the courts of foreign Nations is comity; and this is a recognition which depends, when the last word is said, upon the policy and sense of justice of the domestic court. For a general discussion of the principle see Corpus Juris Secundum (Vol. 27-B, Divorce, § 329, p. 790).

It is also a general principle guiding the consideration of injunctive relief against the prosecution of foreign actions, that injunctions will not be granted where "adequate relief in the court in which the action is brought" can be obtained by the party seeking the injunction; or because of distrust of the foreign court by such a party, or because he prefers to stay in the courts of his own State, or "from considerations of mere inconvenience or expense". (43 C. J. S., Injunctions, § 49, pp. 501, 502.)

Defendant in the action now before us is an alien who seeks to invoke the domestic law of his own country to adjudicate a marital dispute with an alien wife who was personally in that country when the action there was commenced.

To enjoin such an action between parties who are not citizens here, but who are subject to the laws of the other Nation, would be an extraordinary insinuation of the processes of our domestic institutions into the judicial action of a foreign Nation.

We might not recognize, or might give a limited recognition to, a resulting judgment that we would regard as offensive to our policy; but to prevent in advance a citizen of another Nation from appealing to the courts of his own Country, is quite a different thing; and it turns on a basically different principle. There are, perhaps, circumstances where restraint might have to be imposed by the sheer necessities of the case; but there is here no showing of any such necessity.

That we did at one time enter a consent matrimonial judgment between the aliens does not require us either to adopt them as citizens, to accept them as wards, or to throw extraordinary protections around that judgment which will save it always against further adjudications on new facts by courts of their own Country.

The difference is manifest between this case and the case of the New York husband who, moving to Nevada and, residing there, taking the marital status with him, seeks to undo what New York has done for the New York wife, or to make hazardous and difficult for the New York wife the defense in Nevada of the New York judgment.

There we would be compelled to accept the Nevada judgment if there was a bona fide residence; here we would not be compelled by the Constitution to accept the French judgment.

Where the action in the foreign Nation is so obviously and patently defective in respect of jurisdiction of the subject matter that there seems no possibility at all that we would recognize the resulting judgment, injunctive relief will be denied because there is plainly no need for it (*Rosenbaum* v. *Rosenbaum,* 309 N. Y. 371, *supra*). But that case does not hold that injunctive relief will be granted in every case where we might recognize a judgment of a foreign Nation on grounds of comity. A fair view of the cases as a whole in New York indicates that we meet the question of the propriety of the foreign judgment when we are asked to accept it as a matter of comity rather than by injunctive restraint in advance.

The rules of comity between civilized States perhaps indicate that we would ordinarily accept the judgment of France in relation to the marital rights of a French citizen certainly where personal jurisdiction had been acquired, not as a matter of compulsion but as a matter of policy; and it is but another branch of the rule of comity which would cause us not to be led easily to interfere with the foreign judicial proceeding in the process of litigation.

There seems no good reason on general policy, nor under the facts of this case, why we should stop the process of French adjudication between aliens. Our judgment of separation certainly did not contemplate that for grounds later arising between the parties the marriage might not be terminated by the courts of another country acquiring jurisdiction of the subject matter.

The separation agreement which the parties themselves made contemplated the possibility of a divorce "in any other jurisdiction" and made provision for this.

There is no tenable suggestion that the court in France will not enforce the agreement as to alimony; and if it does not, that will be time enough to invoke relief here. The possibility that the $10,000 insurance policy may be cancelled as a result of a French judgment of divorce exists, but this is what the parties contemplated and the possibility is not a ground for our present judicial interposition in the French action.

Process in the French action was served according to French law by leaving the notice with a maid at defendant's place of "temporary sojourn" in Paris. If jurisdiction in an action over a French marriage was obtained by fair notice to a defendant actually in France and subject in this respect to French law and to the authority of French courts, we would not undertake to make a ruling that the French court is without power because

our own municipal rules governing the formalities to be observed in serving process may require something different.

Hence, if we take the facts as shown by the complaint and plaintiff's affidavits to be true, interference with the French action would, after a plenary trial establishing all those facts, not be warranted on the merits and a permanent injunction would be denied as a matter of discretion.

The order should be reversed on the law and the facts, with costs to defendant-appellant; the motion for temporary injunction denied, and the complaint dismissed.

McNally, J. (dissenting). I dissent and vote to affirm the order.

In this action by plaintiff wife to enjoin the prosecution of a divorce action in France by the defendant husband, the appeal is from an order granting a temporary injunction restraining the defendant from prosecuting the divorce action pending this action and denying defendant's cross motion to dismiss the complaint for insufficiency.

The parties were married in France on February 15, 1933. They resided in France from 1933 to 1940. During September, 1940, the parties took up residence in the County and State of New York until April 8, 1954, when they separated. Between 1946 and 1954 the parties spent Spring and Summer of each year in Paris and returned to New York in the Fall. Defendant is one of the principal stockholders of Van Cleef & Arpels, Inc., which owns and operates jewelry shops in the United States and has its principal place of business in the County of New York, and a member of a partnership so engaged in France.

On April 29, 1954, plaintiff commenced an action for separation against defendant in the Supreme Court, New York County. In said action the plaintiff alleged the residence of both parties in the State of New York. Defendant appeared in said action, filed an answer and admitted the allegation of residence. During 1954 and since 1933 the defendant owned a house in France. On this record it also appears that the defendant dwelled for substantially the same periods in New York and France at the time this action was instituted as he had prior to and during the pendency of the separation action. In the separation action of 1954, this defendant admitted the residence of the parties in New York County. On this application the defendant asserts his residence in France and the alienage of both parties. Defendant's opposing affidavit does not deny his or plaintiff's residence in New York. However, in the pending French divorce action, the defendant apparently alleges his French domicile.

Pending the separation action a separation agreement was made between the parties. The judgment of separation was entered November 1, 1954. The separation agreement, dated June 1, 1954, recites the residence of the parties in the County of New York and provides for the payment of $18,000 annually to the plaintiff for her maintenance and support until the death of either party or the remarriage of the plaintiff. The provision for support is subject to the defendant's right to apply for a reduction in·the event his annual compensation is less than $40,000 under circumstances specified in the agreement. The stated circumstances being present, at the option of defendant the application for said reduction may be made to the Supreme Court, New York County, or the court in which a final judgment of divorce has been entered. Provision is also made therein for the maintenance by the defendant of a $10,000 insurance policy on his life for plaintiff's benefit, subject to the condition that no judgment be rendered against the plaintiff in an action for divorce based on New York statutory grounds. The defendant's acknowledgment of the execution of the separation agreement recites his residence in New York County and that he " sojourns temporarily at 61 Rue Chauveau, Neuilly-sur-Seine (France) ".

The defendant was born in France and at all times has been and still is a citizen of France. The plaintiff was born in Monte Carlo, Monaco, and is apparently subject to French law. On October 14, 1958, plaintiff was temporarily in Paris, France. During her then stay in Paris process in the French action for divorce was served on her by delivery to plaintiff's maid. The effect of this service under French law is not clear and can be best determined at a trial. (*Martens* v. *Martens*, 284 N. Y. 363.)

The grounds alleged for the French divorce action are:

" 1. Mrs. Arpels gradually ceased to have any affection for her husband.

" 2. Mrs. Arpels is maintaining and continues to maintain adulterous relations with a Mr. X.

" 3. That these facts constitute the serious insults and the adultery contemplated by the law, constituting a serious violation of the duties and obligations resulting from marriage and make the maintenance of the conjugal bond intolerable."

The defendant alleges that he owns substantial business interests in France and in the United States; that he maintains a permanent place of residence in France and a place of dwelling in New York; that he pays personal income taxes to France as well as the United States and the State of New York. Defend-

ant asserts that the French court has jurisdiction of the action for divorce.

In *Rosenbaum* v. *Rosenbaum* (309 N. Y. 371) an injunction to restrain prosecution of a Mexican divorce action was denied. There, the undenied allegations of the complaint were that the defendant was at all times a resident of New York State and never established residence in Mexico and that service of process in the Mexican action was attempted by publication. The court held that the divorce action was concededly invalid and therefore could not result in a decree entitled to recognition by the courts of this State. However, the court there reaffirmed the propriety of an injunction against the prosecution of a sister State divorce action on the basis that the judgment of that State would be entitled to the presumption of validity under the full faith and credit provision of the Federal Constitution (art. IV, § 1). In such case the constitutionally created presumption imposes on the defendant spouse the obligation to disprove jurisdiction of the court rendering the decree thereby supplying the basis for the granting of an injunction to restrain the prosecution of the action in the sister State.

The burden imposed on the defendant spouse to disprove the validity of the decree rendered by the sister State is the basis for equitable relief. This premise is fortified by the court's reference in the *Rosenbaum* case to *Hammer* v. *Hammer* (303 N. Y. 481, affg. 278 App. Div. 396) and *Garvin* v. *Garvin* (302 N. Y. 96). In adverting to *Hammer* and *Garvin*, the Court of Appeals stated that the defendants there had relied on facts supporting the jurisdiction of the foreign courts. *Rosenbaum* stands for the proposition that an injunction will not issue where the absence of jurisdiction on the part of the foreign court is clear and undisputed. This record establishes, at the very least, disputed issues as to the domiciles of the parties. Where, as here, the defendant strenuously argues and factually supports the jurisdiction of the foreign court, then equity may restrain him from prosecuting the foreign action upon a showing of hardship on the part of the plaintiff in defending on jurisdictional grounds a French action for divorce. The rule of comity as to French judgments (see *Gould* v. *Gould,* 235 N. Y. 14) serves to emphasize that the policy of this State is not offended by and requires the recognition of divorce judgments of that Country and completes the analogy with sister State divorce judgments. I do not believe that the policy of this State is affected by the alienage of a party, especially when, as here, plaintiff alleges and the record factually supports her domicile in this State. (Cf. *Dean* v. *Dean,* 241 N. Y. 240.)

Plaintiff's right to support, under the terms of the separation agreement, at defendant's option, may be subject to modification by the French court if defendant in the action there pending is awarded a divorce. If said divorce is grounded on adultery, plaintiff may forfeit her right to the insurance for her benefit provided for in the separation agreement. The hardship and expense incident to the defense of an action in France by a New York resident is patent. Moreover, here there is personal jurisdiction of the defendant and so far as appears he will not be subjected to any undue burden or expense in meeting the issues as to domicile in this jurisdiction. As was aptly stated by this court in *Hammer* v. *Hammer* (*supra*, p. 399): " We no more than hold that the showing so far made entitles plaintiff to a trial of the issue before the Florida action is prosecuted."

Here, too, the record shows that plaintiff is entitled to test the jurisdiction of the French court insofar as it is grounded on domicile in the courts of this State before the defendant continues with the prosecution of his action in France.

RABIN, J. P., VALENTE and STEVENS, JJ., concur with BERGAN, J.; McNALLY, J., dissents and votes to affirm in opinion.

Order reversed on the law and on the facts, with $20 costs and disbursements to appellant, the motion for temporary injunction denied and defendant's cross motion to dismiss the complaint granted, with $10 costs, and judgment is directed to be entered in favor of the defendant dismissing the complaint, with costs.